COALITION PROTECTING AUTO NO-FAULT v
MICHIGAN CATASTROPHIC CLAIMS ASSOCIATION

Docket No. 314310. Submitted January 8, 2014, at Lansing. Decided
    May 20, 2014, at 9:10 a.m.

   The Coalition Protecting Auto No-Fault (CPAN) brought an action in
   the Ingham Circuit Court, seeking to compel the Michigan Cata-
   strophic Claims Association (MCCA) to disclose information con-
   cerning claims that the MCCA had serviced, including the claim-
   ants' ages, dates of injuries, and total amounts paid. The MCCA
   had refused to provide this information on the ground that MCL
   500.134(4) and (6)(c) expressly exempted its records from Michi-
   gan's Freedom of Information Act (FOIA), MCL 15.231 *et seq*. The
   case was consolidated by stipulation with a separate complaint
   filed by the Brain Injury Association of Michigan, and was later
   joined by several additional individual plaintiffs. In its amended
   complaint, CPAN claimed that MCL 500.134 was unconstitutional
   on several grounds and that plaintiffs had a right to inspect the
   MCCA's records under the common law and under various trust
   theories. Plaintiffs and the MCCA moved for summary disposition.
   The court, Clinton Canady, III, J., denied the MCCA's motion and
   granted summary disposition in plaintiffs' favor except to the
   extent they sought information about individual claimants. The
   Court of Appeals granted the MCCA's application for leave to
   appeal, limited to the issues raised in the application and support-
   ing brief, and plaintiffs cross-appealed.

       The Court of Appeals *held*:

       1. Plaintiffs did not have a right to access the MCCA's records
   because the records were expressly exempted from disclosure
   under FOIA by MCL 500.134(4) and (6)(c).

       2. The Legislature's failure to reenact and republish FOIA
   when it enacted MCL 500.134 did not render MCL 500.134
   unconstitutional under Const 1963, art 4, § 24, because that
   statute did not revise, alter, or amend FOIA but rather operated
   pursuant to FOIA.

       3. The title and the body of MCL 500.134 were not so diverse
   in nature that they violated the Title-Object Clause, Const 1963,
   art 4, § 25.

4. The trial court erred by ruling that Michigan citizens were entitled to inspect the MCCA's records under *Shavers v Attorney General*, 402 Mich 554 (1978), because the constitutional deficiencies in the Insurance Code identified in *Shavers* have been corrected; *Shavers* did not hold that policyholders could access every component of their insurance rates; and, unlike in *Shavers*, there is an effective regulatory scheme that governs the MCCA and the procedures it uses to determine its premiums. Plaintiffs did not have a right to access the records under *Nowack v Auditor General*, 243 Mich 200 (1928), because the Legislature supplanted any preexisting common-law rights to access public records when it enacted FOIA and MCL 500.134.

5. The trial court erred by ruling that plaintiffs had a right to access the MCCA's records under trust theories. Resulting trusts are unrelated to an individual's right to know how insurance premiums are calculated, and constructive trusts are equitable remedies rather than independent causes of action and are, in any event, not applicable in this case.

Reversed and remanded for entry of an order awarding summary disposition to the MCCA.

1. STATUTES — FREEDOM OF INFORMATION ACT — EXEMPTIONS — MICHIGAN CATASTROPHIC CLAIMS ASSOCIATION.

MCL 500.134(4) and (6)(c) exempt the records of the Michigan Catastrophic Claims Association from disclosure under the Freedom of Information Act, MCL 15.231 *et seq*.

2. CONSTITUTIONAL LAW — REQUIREMENT TO REENACT AND REPUBLISH — FREEDOM OF INFORMATION ACT — EXEMPTIONS — INSURERS.

The Legislature's failure to reenact and republish the Freedom of Information Act, MCL 15.231 *et seq.*, when it enacted MCL 500.134, which exempts the records of certain associations of insurers from disclosure under the Freedom of Information Act, MCL 15.231 *et seq.*, did not render MCL 500.134 unconstitutional under Const 1963, art 4, § 25.

3. CONSTITUTIONAL LAW — TITLE-OBJECT CLAUSE — FREEDOM OF INFORMATION ACT — EXEMPTIONS — INSURERS.

The title and the body of 1988 PA 349, which amends MCL 500.134 to exempt the records of certain associations of insurers from disclosure under the Freedom of Information Act, MCL 15.231 *et seq.*, were not so diverse in nature that they violated the Title-Object Clause, Const 1963, art 4, § 24.

4. STATUTES — FREEDOM OF INFORMATION ACT — COMMON-LAW RIGHT TO ACCESS PUBLIC RECORDS — MICHIGAN CATASTROPHIC CLAIMS ASSOCIATION.

> The Legislature supplanted any preexisting common-law rights to access the records of the Michigan Catastrophic Claims Association when it enacted the Freedom of Information Act, MCL 15.231 *et seq.*, and MCL 500.134.

*Kerr, Russell and Weber, PLC* (by *Joanne Geha Swanson*), and *Sinas, Dramis, Brake, Boughton & McIntyre, PC* (by *George T. Sinas*), for the Coalition Protecting Auto No-Fault and others.

*James R. Giddings* for the Brain Injury Association of Michigan and others.

*Noah D. Hall*, of counsel for plaintiffs.

*Dykema Gossett PLLC* (by *Lori McAllister, Joseph K. Erhardt*, and *Jill M. Wheaton*) for the Michigan Catastrophic Claims Association.

Amici Curiae:

*Willingham & Coté* (by *John A. Yeager* and *Kimberlee A. Hillock*) for the Insurance Institute of Michigan and the Michigan Insurance Coalition.

*Kerr, Russell and Weber, PLC* (by *Daniel J. Schulte* and *Jacquelyn A. Klima*), for the Michigan State Medical Society and others.

Before: OWENS, P.J., and BORRELLO and GLEICHER, JJ.

BORRELLO, J. Defendant, the Michigan Catastrophic Claims Association (MCCA), appeals by leave granted a December 26, 2012 trial court order granting partial summary disposition in favor of plaintiffs, the Coalition Protecting Auto No-Fault and others, pursuant to MCR 2.116(C)(8), and denying the MCCA's motion for sum-

mary disposition under MCR 2.116(C)(8) and MCR 2.116(C)(10). Plaintiffs cross-appeal the same order. For the reasons set forth in this opinion, we reverse and remand for entry of an order awarding summary disposition in favor of the MCCA.

### I. BACKGROUND

This action involves plaintiffs' requests to inspect certain of the MCCA's records. Plaintiffs advance arguments premised on the Michigan Freedom of Information Act (FOIA), MCL 15.231 *et seq.*, the common law, and the law of trusts. The MCCA was created by the Legislature to protect no-fault automobile insurers from catastrophic losses arising from their obligation to pay or reimburse no-fault policyholders' lifetime medical expenses. *League Gen Ins Co v Mich Catastrophic Claims Ass'n*, 435 Mich 338, 340-341; 458 NW2d 632 (1990). As a precondition to writing no-fault insurance in Michigan, every insurer must be a member of the MCCA. MCL 500.3104(1). Member insurers are required to pay annual premiums to the MCCA, MCL 500.3104(7), and in turn, the MCCA indemnifies its members for their "ultimate loss sustained under personal protection insurance coverage in excess [of a fixed statutory amount,]" MCL 500.3104(2).

On November 22, 2011, plaintiff Coalition Protecting Auto No-Fault (CPAN) sent the MCCA a FOIA request, seeking certain information concerning "all" open and closed claims "serviced by" the MCCA. CPAN requested information including the age of claimants, the dates of injuries, when claims were closed, and the total amounts paid. The MCCA refused to disclose the information, claiming in a letter that it was "expressly exempted from FOIA requests" by MCL 500.134, which provides in pertinent part:

(4) A record of an association or facility shall be exempted from disclosure pursuant to section 13 of the freedom of information act . . . , [MCL 15.243].

\* \* \*

(6) As used in this section, "association or facility" means . . .

\* \* \*

(c) The catastrophic claims association . . . .

On January 23, 2012, CPAN filed suit against the MCCA in the Ingham Circuit Court, seeking to compel the MCCA to disclose the requested information. Meanwhile, plaintiff Brain Injury Association of Michigan (BIAMI) and several individual plaintiffs (the BIAMI plaintiffs) commenced a separate lawsuit against the MCCA after it denied their FOIA request for similar information. On July 5, 2012, CPAN, the MCCA and the BIAMI plaintiffs stipulated to consolidate the cases and to allow CPAN to file an amended complaint.

CPAN alleged four counts in its amended complaint.[1] In Count I, CPAN claimed that MCL 500.134 was unconstitutional in that it (1) violated Const 1963, art 4, § 25, because the statute amended FOIA by exempting the MCCA from FOIA without reenacting and republishing FOIA, (2) violated the Title-Object Clause of the state constitution, Const 1963, art 4, § 24, and (3) violated the state and federal constitutional "guarantees of due process and equal protection" as articulated in *Shavers v Attorney General*, 402 Mich 554; 267 NW2d 72 (1978). In Count II, CPAN alleged that it had a common-law right to inspect the MCCA's records, and

---

[1] Several additional individual plaintiffs were added to the case when CPAN filed its amended complaint.

in Counts III and IV, CPAN claimed a right to inspect the MCCA's records under resulting and constructive trust theories. The BIAMI plaintiffs alleged that they had a right to access the MCCA's records pursuant to *Shavers*, the common law, and under resulting and constructive trust theories.

Shortly thereafter, the MCCA moved for summary disposition pursuant to MCR 2.116(C)(8) and MCR 2.116(C)(10), and CPAN filed a cross-motion for summary disposition pursuant to MCR 2.116(I)(2), which the trial court construed as a motion brought under MCR 2.116(C)(8). The BIAMI plaintiffs moved for summary disposition under MCR 2.116(C)(9) and MCR 2.116(C)(10), then later withdrew their (C)(10) motion. Despite the differences in plaintiffs' motions, the trial court ultimately granted partial summary disposition in favor of all plaintiffs under MCR 2.116(C)(8), denying plaintiffs' motions to the extent they sought disclosure of information concerning individual claimants. The court denied the MCCA's motion in its entirety.

The trial court ruled that the MCCA was a "public body" for purposes of FOIA because the MCCA was "created entirely by statute." The court concluded that MCL 500.134 did not exempt the MCCA's records from FOIA, stating:[2]

MCL 500.134 does not contain any specific references regarding information exempt from disclosure.

Secondly, the plain language of section (4) . . . does not indicate that the legislature intended for a "whole sale" carve out exemption of all MCCA records because there is a general cross reference to MCL 15.243 (A record of an

---

[2] The trial court's original opinion and order is missing from the lower court record; however, the MCCA attached a copy to its application for leave to appeal and plaintiffs do not contest the authenticity of that document.

association or facility shall be exempted from disclosure pursuant to section 13 of the freedom of information act.... The fact that the Legislature used the phrase "pursuant to section 13" of FOIA, rather than specifically indicating that all MCCA records are exempt under 15.243(d) ... tends to show that the Legislature intended for information to be exempt from FOIA only if such information came within one of the specified exemptions in MCL 15.243. [Emphasis in original.]

The trial court also held that plaintiffs were entitled to the MCCA's records under *Shavers*, 402 Mich at 554, the common law, and trust theories, explaining:

In addition, the Court agrees with CPAN's argument regarding the decision in [*Shavers*] that Michigan citizens have a right to know how the insurance premium they pay is calculated to ensure that no-fault insurance is provided on a fair and equitable basis. This concept intertwines with the theories asserted by BIAMI regarding the common law right to information and resulting trusts. Because the MCCA rate charged to insurers is passed on to the insured individuals as part of the premium they pay, it is reasonable to conclude that citizens essentially fund the MCCA reserves by paying that premium; thus, individual citizens have a financial interest in the rate calculation process and how it is conducted.

\* \* \*

... Specifically, pursuant to the constitutional principles articulated in *Shavers*, the MCCA must disclose general rate calculation information such as amount of funds contained in MCCA reserves, number of claimants, administrative costs, nature and type of investments of the reserves, amount currently paid by insurers and specific accounting as to increase/decrease in yearly rate calculated, etc. However ... MCCA is not required to disclose personal information regarding individual claims or information that could reasonably lead to extrapolation of individual claimants' names.

On January 16, 2013, the MCCA moved for leave to appeal the trial court's order in this Court and moved this Court to stay the proceedings pending its appeal. On March 8, 2013, this Court granted the MCCA leave to appeal and stayed the proceedings pending resolution of the appeal.[3] Thereafter, plaintiffs filed a claim of cross-appeal.

## II. STANDARDS OF REVIEW

We review de novo a trial court's ruling on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). "A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint." *Id.* at 119. In deciding the motion, a trial court may only consider the pleadings and "[a]ll well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant." *Id.* Summary disposition is appropriate if the claims alleged are "so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Wade v Dep't of Corrections*, 439 Mich 158, 163; 483 NW2d 26 (1992). To the extent that we must interpret and apply relevant statutory provisions, "[i]ssues of statutory construction involve questions of law that we review de novo." *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 271; 826 NW2d 519 (2012). Similarly, we review de novo constitutional issues and the proper interpretation and application of the common law. *Great Lakes Society v Georgetown Charter Twp*, 281 Mich App 396, 425; 761 NW2d 371 (2008); *Brecht v Hendry*, 297 Mich App 732, 736; 825 NW2d 110 (2012).

---

[3] *Coalition Protecting Auto No-Fault v Mich Catastrophic Claims Ass'n*, unpublished order of the Court of Appeals, entered March 8, 2013 (Docket No. 314310).

### III. ANALYSIS

#### A. FOIA

The MCCA contends that the trial court erred by holding that its records were not exempt from FOIA.

"Under FOIA, a public body must disclose all public records that are not specifically exempt under the act." *Hopkins v Duncan Twp*, 294 Mich App 401, 409; 812 NW2d 27 (2011), citing MCL 15.233(1). In this case, even assuming that the MCCA is a public body for purposes of FOIA, the MCCA is not required to disclose any of its records because the records are expressly exempted from FOIA by statute.

Section 13 of FOIA, MCL 15.243, lists various types of records and information that a public body may exempt from the act's disclosure requirements. MCL 15.243(1)(d) provides that "[a] public body may exempt from disclosure as a public record under this act . . . [r]*ecords or information specifically described and exempted from disclosure by statute*" (emphasis added). MCL 500.134, a section of the Insurance Code,[4] specifically describes and exempts the MCCA's records from FOIA disclosure as follows:

(4) A record of an association or facility shall be exempted from disclosure pursuant to section 13 of the freedom of information act . . . .

\* \* \*

(6) As used in this section, "association or facility" means an association of insurers created under this act and any other association or facility formed under this act as a nonprofit organization of insurer members, including, but not limited to, the following:

\* \* \*

---

[4] MCL 500.100 *et seq.*

(c) *The catastrophic claims association* created under chapter 31. [Emphasis added.]

The MCCA argues that, read together, MCL 500.134(4) and (6) exempt its records from FOIA. Plaintiffs implicitly concede that the MCCA is an "association or facility" under MCL 500.134(6), but nevertheless contend that the statute does not carve out a wholesale exemption for the MCCA's records. Resolution of this issue requires that we construe the meaning of the relevant statutory provisions. "When interpreting the meaning of a statute, our primary goal is to discern the intent of the Legislature by first examining the plain language of the statute." *Driver v Naini*, 490 Mich 239, 246-247; 802 NW2d 311 (2011). "When the language is clear and unambiguous, we will apply the statute as written and judicial construction is not permitted." *Id.* at 247.

Applying the plain language of MCL 500.134(4) and (6), we conclude that the trial court erred as a matter of law by holding that the MCCA's records were not exempt from FOIA. Subsection (4) unambiguously exempts "[a] record of an association or facility" from disclosure, and subsection (6)(c) defines an "association or facility" to include the MCCA. When read together, the subsections provide that "a record of [the MCCA] *shall be exempted* from disclosure pursuant to section 13 of [FOIA]," thus specifically describing and exempting the MCCA's records from disclosure. These provisions work in accordance with § 13 of FOIA, which permits a public body to exempt from disclosure "[r]ecords or information specifically described and exempted . . . by statute." MCL 15.243(1)(d). There is no ambiguity in these provisions: subsections (4) and (6) clearly mandate that if "a record" of the MCCA is at issue, it "shall be exempted from disclosure pursuant to

section 13 of [FOIA]." See *Old Kent Bank v Kal Kustom Enterprises*, 255 Mich App 524, 532; 660 NW2d 384 (2003) ("The word 'shall' is generally used to designate a mandatory provision . . . .").

Plaintiffs make much of the fact that MCL 500.134(4) refers to "a record," while MCL 15.243(1)(d) applies to "records or information specifically described and exempted from disclosure by statute." We find this minimally differing language of no interpretive consequence. The statute fully exempts *any and all* of the MCCA's records from FOIA. It accomplishes this goal by employing the indefinite article "*a*" to identify which records are exempt from FOIA. The Legislature's use of the indefinite article "*a*" in MCL 500.134(4) clearly indicates its intent to exempt all of the MCCA's records in general.

The trial court erred by concluding that the phrase "pursuant to section 13" in MCL 500.134(4) meant that the MCCA's records were only exempt from FOIA if they fell within one of the enumerated exemptions in § 13. As noted, § 13(1)(d) permits another statute to exempt records from FOIA. In this case, MCL 500.134(4) and (6) exempt the MCCA's records from disclosure. As a result, it is not necessary for the MCCA's records to fall within any of the other § 13 exemptions. See *King v Mich State Police Dep't*, 303 Mich App 162, 177-178; 841 NW2d 914 (2013). The trial court's interpretation to the contrary rendered MCL 500.134(4) and (6) nugatory. When the Legislature enacted MCL 500.134, all the exemptions in § 13 existed.[5] Therefore, to conclude that only the preexisting exemptions in § 13 shielded the MCCA's records from disclosure would render MCL 500.134(4) and (6) nuga-

---

[5] FOIA was effective in 1977, while MCL 500.134 was enacted in 1988. See 1976 PA 442; 1988 PA 349.

tory. Were plaintiffs' argument correct, the Legislature would have had no reason to enact MCL 500.134. "In interpreting a statute, we must avoid a construction that would render part of the statute surplusage or nugatory." *Robinson v City of Lansing*, 486 Mich 1, 21; 782 NW2d 171 (2010) (quotation marks, citation, and alterations omitted). Contrary to the trial court's conclusion, the phrase "pursuant to section 13" did not affect the plain meaning of MCL 500.134(4) and (6); rather, that phrase simply indicated that the exemption operated in accordance with FOIA.

Plaintiffs contend that § 13(1)(d) permits a statutory exemption for the production of specified records but it does not permit "a statutory exemption of the public body itself." Therefore, according to plaintiffs, MCL 500.134 cannot wholly exempt the MCCA's records from FOIA. Plaintiffs' argument lacks merit. The plain language of MCL 500.134(4) and (6) meets the requirements of § 13(1)(d) in that, read together, these subsections specifically exempt all records of the MCCA. Nothing in § 13 of FOIA precludes the Legislature from exempting all records of a particular entity from FOIA, and we will not read such a restriction into § 13. See *Paschke v Retool Indus*, 445 Mich 502, 511; 519 NW2d 441 (1994) ("Where the statutory language is clear, the courts should neither add [to] nor detract from its provisions.").

On cross-appeal, plaintiffs contend that MCL 500.134(4) cannot exempt the MCCA's records because the statute violates the state constitution. Although the trial court failed to address and decide this issue, CPAN raised it in the lower court and the issue involves a question of law concerning which the necessary facts have been presented. Therefore, we will address plaintiffs' constitutional arguments. See *Duffy v Dep't of*

*Nat'l Resources*, 490 Mich 198, 209 n 3; 805 NW2d 399 (2011) (noting that an issue not properly preserved for appeal may be addressed if it involves a question of law concerning which the necessary facts have been presented).

"[W]hen a party seeks our declaration that a statute violates the Constitution, we must operate with the presumption that the statute is constitutional unless its unconstitutionality is clearly apparent." *UAW v Green*, 302 Mich App 246, 252; 839 NW2d 1 (2013) (quotation marks and citation omitted). "Every reasonable presumption or intendment must be indulged in favor of the validity of an act, and it is only when invalidity appears so clearly as to leave no room for reasonable doubt that it violates some provision of the Constitution that a court will refuse to sustain its validity." *Phillips v Mirac, Inc*, 470 Mich 415, 423; 685 NW2d 174 (2004) (quotation marks and citation omitted). Therefore, "the burden of proving that a statute is unconstitutional rests with the party challenging it." *In re Request for Advisory Opinion Regarding Constitutionality of 2005 PA 71*, 479 Mich 1, 11; 740 NW2d 444 (2007).

Plaintiffs contend that MCL 500.134(4) violates the Michigan Constitution because the Legislature did not reenact and republish FOIA when it enacted MCL 500.134(4). Const 1963, art 4, § 25 provides: "No law shall be revised, altered or amended by reference to its title only. The section or sections of the act altered or amended shall be re-enacted and published at length."

MCL 500.134(4) did not revise, alter, or amend FOIA. Rather, FOIA contemplates statutory exemptions. Specifically, § 13(1)(d) provides in pertinent part that "[a] public body may exempt from disclosure as a public record under this act . . . [r]ecords or information specifically described and exempted from disclosure by

statute." MCL 15.243(1)(d). By including this language, the Legislature drafted FOIA in such a way that future statutory exemptions would not constitute revisions to or amendments of FOIA, but instead would work pursuant to FOIA. Therefore, when the Legislature enacted MCL 500.134(4), there was no duty to reenact and republish FOIA.

Plaintiffs also contend that MCL 500.134(4) violates the Title-Object Clause of the Michigan Constitution, Const 1963, art 4, § 24, which provides:

> No law shall embrace more than one object, which shall be expressed in its title. No bill shall be altered or amended on its passage through either house so as to change its original purpose as determined by its total content and not alone by its title.

"The purpose of the Title-Object Clause is to ensure that legislators and the public receive proper notice of legislative content and [to] prevent[] deceit and subterfuge." *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 388; 803 NW2d 698 (2010) (quotation marks and citation omitted). "The constitutional requirement should be construed reasonably and permits a bill enacted into law to include all matters germane to its object, as well as all provisions that directly relate to, carry out, and implement the principal object." *Id.* (quotation marks and citation omitted).

There are three types of challenges that may be brought under the Title-Object Clause:

> (1) a "title-body" challenge, which indicates that the body exceeds the scope of the title, (2) a "multiple-object challenge," which indicates that the body embraces more than one object, and (3) a "change of purpose challenge," which indicates that the subject matter of the amendment is not germane to the original purpose. [*Wayne Co Bd of Comm'rs v Wayne Co Airport Auth*, 253 Mich App 144, 185; 658 NW2d 804 (2002).]

In the trial court, CPAN advanced all three challenges; however, on appeal plaintiffs do not renew their multiple-object argument. Similarly, with respect to their change of purpose challenge, plaintiffs fail to provide a cognizable argument and they have therefore abandoned it for review. See *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998) ("It is not sufficient for a party simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position.") (quotation marks and citation omitted). We therefore proceed by addressing plaintiffs' title-body challenge.

A title-body challenge tests "whether the title [of an act] gives fair notice to the legislators and the public of the challenged provision" contained in the act's body. *H J Tucker & Assoc, Inc v Allied Chucker & Eng Co*, 234 Mich App 550, 559; 595 NW2d 176 (1999).

> [I]t is not necessary that a title be an index of all of an act's provisions. It is sufficient that the act centers to one main general object or purpose which the title comprehensively declares, though in general terms, and if provisions in the body of the act not directly mentioned in the title are germane, auxiliary, or incidental to that general purpose . . . . [*Livonia v Dep't of Social Servs*, 423 Mich 466, 501; 378 NW2d 402 (1985) (quotation marks and citation omitted).]

The fair-notice requirement is violated only "where the subjects [of the title and body] are so diverse in nature that they have no necessary connection . . . ." *People v Cynar*, 252 Mich App 82, 85; 651 NW2d 136 (2002) (quotation marks and citations omitted).

Enrolled Senate Bill 707, which was signed into law as 1988 PA 349, is titled in pertinent part:

AN ACT to amend section 134 of Act No. 218 of the Public Acts of 1956, entitled as amended "An act to revise, consolidate, and classify the laws relating to the insurance and surety business; to regulate the incorporation or formation of domestic insurance and surety companies and associations and the admission of foreign and alien companies and associations; *to provide their rights, powers, and immunities* and to prescribe the conditions on which companies and associations organized, existing, or authorized under this act may exercise their powers; *to provide the rights, powers, and immunities* and to prescribe the conditions on which other persons, firms, corporations, and *associations* engaged in an insurance or surety business may exercise their powers . . . being section 500.134 of the Michigan Compiled Laws." [Emphasis added.]

The title indicates that part of the purpose of the act is to define the rights, powers, and immunities of associations involved in the insurance business. The MCCA is an association involved in the insurance business, and the FOIA exemption in MCL 500.134(4) concerns the rights, powers, and immunities of such associations. Therefore, it cannot be said that the title and body of the act are so "diverse in nature that they have no necessary connection" between each other and plaintiffs' title-object argument fails. *Cynar*, 252 Mich App at 85.

In sum, the plain language of MCL 500.134(4) and (6) exempts the MCCA's records from FOIA, and MCL 500.134(4) does not violate Const 1963, art 4, § 24 or Const 1963, art 4, § 25. The trial court therefore erred as a matter of law by holding that the MCCA was required to disclose any of its records under FOIA.[6]

---

[6] Because we conclude that all MCCA records are exempt from FOIA, we need not address plaintiffs' argument on cross-appeal that the trial court erred by holding that certain information regarding individual claimants was exempt from disclosure.

## B. *SHAVERS* v *ATTORNEY GENERAL*

The MCCA next argues that the trial court erred as a matter of law by ruling that plaintiffs and "Michigan citizens" were entitled to inspect its records pursuant to the holding in *Shavers*, 402 Mich at 554. We agree.

In *Shavers*, the Michigan Supreme Court addressed a constitutional challenge to the no-fault act. The *Shavers* Court held that the statutory obligation for all motorists to buy no-fault insurance was dependent on the right of all motorists to have no-fault insurance "available at fair and equitable rates." *Id.* at 599. Accordingly, the Court held that the obligation of motorists to buy no-fault insurance was unconstitutional if their right to have insurance available at fair and adequate rates was not protected by due process. *Id.* at 599-602. In determining what process was due, *Shavers* held that, at a minimum, the statutory scheme must ensure that insurance rates "are not, in fact, 'excessive, inadequate or unfairly discriminatory' " and also ensure that "persons affected have notice as to how their rates are determined and an adequate remedy regarding that determination." *Id.* at 601, quoting MCL 500.2403(1)(d).

Contrary to the trial court's conclusion, *Shavers* is inapplicable in the present case. In response to *Shavers*, the Legislature amended the Insurance Code by enacting 1979 PA 145 and 1979 PA 147. *Kreiner v Fischer*, 471 Mich 109, 115-116; 683 NW2d 611 (2004), overruled on other grounds *McCormick v Carrier*, 487 Mich 180; 795 NW2d 517 (2010). In doing so, the Legislature corrected the no-fault act's constitutional deficiencies. *Id.* Moreover, the concerns identified in *Shavers* are not present in this case. Unlike the no-fault premiums at issue in *Shavers*, this case involves premiums that the MCCA charges to its member insurers. And, unlike the

regulatory scheme that was deficient in *Shavers*, there is a detailed regulatory scheme that governs the MCCA and the premiums it charges to its members. See MCL 500.3104.

Furthermore, even assuming that the premiums are passed on to individual policyholders, *Shavers* does not stand for the broad proposition that policyholders are entitled to access *every* component of the cost they pay for no-fault insurance. Instead, *Shavers* mandated disclosure of limited ratemaking criteria to ensure that no-fault policyholders were treated fairly and equally. In this case, to the extent the MCCA's premiums are passed to policyholders, unlike in *Shavers*, they are subject to an extensive regulatory scheme.

In sum, *Shavers* is inapplicable in this case because the Insurance Code corrected the constitutional deficiencies identified in *Shavers*, *Shavers* did not stand for the broad proposition that policyholders have the right to access every component that comprises their insurance rates, and, unlike in *Shavers*, there is an effective regulatory scheme in place that governs the MCCA and the procedures the MCCA uses to determine its premiums. Accordingly, the trial court erred as a matter of law by holding that plaintiffs had a right to access the MCCA's records pursuant to *Shavers*.

### C. COMMON LAW

Next, the MCCA argues that the trial court erred by concluding that *Shavers* "intertwined" with plaintiffs' right to access its records under the common law. Plaintiffs counter that the trial court correctly held that they had a common-law right to inspect the MCCA's records, and they rely on *Nowack v Auditor General*, 243 Mich 200; 219 NW 749 (1928), in support of their argument.

In *Nowack*, an editor and publisher of a newspaper sought a writ of mandamus to compel the defendant to permit him to inspect certain public records pertaining to the expenditure of public money. *Id.* at 201-202. Our Supreme Court explained that "[t]here is no question as to the common-law right of the people at large to inspect public documents and records. The right is based on the interest which citizens necessarily have in the matter to which the records relate." *Id.* at 204. The Court held that the plaintiff had a common-law right, as a citizen, to access the defendant's records in order to determine whether public money was being spent properly. *Id.* at 208.

*Nowack* illustrates this state's longstanding public policy that citizens have access to certain public records. However, by enacting FOIA and MCL 500.134(4) and (6), the Legislature clearly intended to supplant any preexisting common-law right to access the MCCA's records.

"The common law remains in force until it is affirmatively modified." *Hamed v Wayne Co*, 490 Mich 1, 22 n 57; 803 NW2d 237 (2011). "The Legislature is presumed to know the common law, and any abrogation of the common law must be explicit." *Id.* A statutory scheme that is "comprehensive, providing in detail a course of conduct to pursue and the parties and things affected, and designates specific limitations and exceptions," indicates a legislative intention to supplant the common law on that subject. *Kyser v Kasson Twp*, 486 Mich 514, 539; 786 NW2d 543 (2010) (quotation marks and citations omitted).

While there is no published caselaw in this state directly on point, the United States Supreme Court and federal courts have addressed conflicts between the

federal common law and federal legislation including the federal Freedom of Information Act, (FOIA), 5 USC 552.[7]

In *Nixon v Warner Communications, Inc*, 435 US 589, 591, 594; 98 S Ct 1306; 55 L Ed 2d 570 (1978), the respondents claimed a federal common-law right to access recordings introduced at the trial of President Nixon's former advisors. The United States Supreme Court recognized a federal common-law right to access public information, stating that "the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Id.* at 597. Nevertheless, the Court denied the respondents' request on the ground that the Presidential Recordings Act provided an alternative method of accessing the records. *Id.* at 603-606. In doing so, the *Nixon* Court established the principle that "a statutory disclosure scheme preempts the common law right" of access. *Ctr for Nat'l Security Studies v US Dep't of Justice*, 331 F3d 918, 936; 356 US App DC 333 (2003).

Federal courts have applied this principle to the federal FOIA. In *United States v El-Sayegh*, 131 F3d 158, 163; 327 US App DC 308 (1997), the Court of Appeals for the District of Columbia Circuit applied *Nixon* and held that the media did not have a common-law right to access a withdrawn plea agreement because "[t]he appropriate device" to obtain disclosure was "a [federal FOIA] request addressed to the relevant agency." *Id.*, citing *Nixon*, 435 US at 605-606.

Several years later, in *Ctr for Nat'l Security Studies*, 331 F3d 918, the same court reaffirmed the principle

---

[7] Though not binding on this Court's interpretation of state law, "federal precedent is generally considered highly persuasive when it addresses analogous issues." *Wilcoxon v Minn Mining & Mfg Co*, 235 Mich App 347, 360 n 5; 597 NW2d 250 (1999).

that the federal FOIA supplanted an individual's common-law right to access public information. In that case, the plaintiffs, public interest groups, sought to compel the Department of Justice to disclose information concerning "persons detained in the wake of the September 11 terrorist attacks . . . ." *Id.* at 920. The plaintiffs argued in part that they had both a right under FOIA and a common-law right to access the information. *Id.* at 925, 936. The court rejected both arguments, holding that the information fell within a FOIA exemption and that FOIA supplanted the plaintiffs' common-law right. *Id.* at 932-933, 936-937. The court explained:

> FOIA provides an extensive statutory regime for plaintiffs to request the information they seek. Not only is it uncontested that the requested information meets the general category of information for which FOIA mandates disclosure, but for the reasons set forth above, we have concluded that it falls within an express statutory exemption as well. It would make no sense for Congress to have enacted the balanced scheme of disclosure and exemption, and for the court to carefully apply that statutory scheme, and then to turn and determine that the statute had no effect on a preexisting common law right of access. Congress has provided a carefully calibrated statutory scheme, balancing the benefits and harms of disclosure. That scheme preempts any preexisting common law right. [*Id.* at 936-937.]

We find the principles set forth in *Nixon, El-Sayegh,* and *Ctr for Nat'l Security Studies* instructive in this case. Like its federal counterpart, Michigan's FOIA provides a comprehensive statutory scheme that governs requests for public records held by public bodies. FOIA provides a detailed course of conduct for individuals to pursue in order to obtain public records. Included within the scheme are statutory exemptions for certain types of information. As we have explained, the MCCA's

records fall within one of those exemptions. The Legislature has determined that those records are not subject to disclosure. It would be illogical to conclude that this comprehensive legislation has no effect on plaintiffs' preexisting common-law right to access the MCCA's records.

Plaintiffs appear to contend that, irrespective of FOIA's alteration of the common law, if the MCCA is considered a private entity, plaintiffs have a common-law right to inspect its records. However, even if we were to assume that the MCCA is a private entity, plaintiffs would not have the right to inspect its records. *Nowack* concerned the common-law right to access *public* records. See *Nowack*, 243 Mich at 203-204; *Breighner v Mich High Sch Athletic Ass'n, Inc*, 471 Mich 217, 234; 683 NW2d 639 (2004) (explaining that "FOIA was enacted to continue the common-law right Michigan citizens have traditionally possessed to access government documents"); *Booth Newspapers, Inc, v Muskegon Probate Judge*, 15 Mich App 203, 207; 166 NW2d 546 (1968) (noting that "[t]he *Nowack* decision has placed Michigan at the vanguard of those states holding that a citizen's accessibility to *public records* must be given the broadest possible effect") (emphasis added, quotation marks and citation omitted); *In re Midland Publishing Co, Inc*, 113 Mich App 55, 63; 317 NW2d 284 (1982) (citing *Nowack* and explaining that "Michigan has long recognized a common-law right to access to *public records*") (emphasis added). Thus, contrary to plaintiffs' argument, *Nowack* does not support the proposition that a citizen has a right to access private records.

Plaintiffs' argument that a "special interest" vests an individual with the right to inspect private records under *Nowack* is also without legal merit. While the

*Nowack* Court referred to the plaintiff's "special interest" in the records of the auditor general, the Court did so only because the plaintiff sought to enforce his right to inspect the records by a writ of mandamus in his own name as opposed to one through the Attorney General. The Court explained:

> So, in the instant case, the plaintiff as a citizen and taxpayer has a common-law right to inspect the public records in the auditor general's office . . . . It is a right that belongs to his citizenship. It is a right which he enjoys in common with all other citizens, a public right which can be enforced only by mandamus proceedings brought by the attorney general. *It is not, and never has been, the policy of the law to permit private individuals the use of the writ of mandamus against public officers, except in cases where they had some special interest, not possessed by the citizens generally* . . . .
>
> The plaintiff has not sought to enforce his rights through the office of the attorney general. He has begun this suit in his own name. In order to maintain it, he must show that he has a special interest not possessed by the citizens generally. [*Nowack*, 243 Mich at 208 (quotation marks and citation omitted; formatting altered).]

Thus, the special interest addressed in *Nowack* did not vest the plaintiff with a right to access private documents. Rather, the inquiry into the plaintiff's special interest occurred only because the plaintiff sought to enforce his right to inspect public records by a writ of mandamus in his own name.

Plaintiffs also argue that the *Nowack* Court's reference to a stockholder's right to inspect the "books and records of his corporation" shows that individuals have a common-law right to inspect private records. In discussing an individual's ability to enforce a right of inspection by way of mandamus, the *Nowack* Court discussed cases involving a "controversy over the right

of a stockholder to inspect the books and records of his corporation." *Id.* at 206. Contrary to plaintiffs' argument, this aspect of the Court's opinion was simply part of a broader discussion of mandamus proceedings. See *id.* at 206-207. It does not stand for the broad proposition that an individual has a right to inspect private records under the common law. Moreover, unlike a shareholder's interest in the books of his or her corporation, which involves contractual rights, here, plaintiffs are not shareholders of the MCCA. Accordingly, even if we were to assume that the MCCA is a private entity, plaintiffs would not have a common-law right under *Nowack* to inspect its records.

In sum, under the common law, citizens of this state had a right to access certain public records held by public entities as articulated in *Nowack*; however, by enacting FOIA and MCL 500.134(4) and (6), the Legislature created a comprehensive statutory scheme that governs access to public records in general and the MCCA's records in particular. In doing so, the Legislature clearly supplanted any preexisting common-law right of inspection that plaintiffs may have had in this case, and the trial court erred by concluding otherwise.

### D. RESULTING AND CONSTRUCTIVE TRUSTS

The MCCA argues that, to the extent the trial court ruled that plaintiffs were entitled to access its records under a trust theory, the court erred as a matter of law. After agreeing with plaintiffs' argument concerning *Shavers*, the trial court stated that "[t]his concept intertwines with the theories . . . regarding . . . resulting trusts."

Our Supreme Court described a resulting trust as follows:

> A resulting trust arises where a person makes or causes to be made a disposition of property under circumstances which raise an inference that he does not intend that the person taking or holding the property should have the beneficial interest therein . . . . [*Potter v Lindsay*, 337 Mich 404, 410; 60 NW2d 133 (1953) (quotation marks and citation omitted).]

To the extent the trial court held that plaintiffs are entitled to access the MCCA's records under a resulting trust theory, the trial court erred as a matter of law. A resulting trust is wholly unrelated to an individual's right to know how insurance premiums are calculated. Rather, a resulting trust concerns certain transfers of property to a third party. *Id*. Thus, the trial court erred by holding that *Shavers* "intertwined" with a resulting trust theory. Furthermore, plaintiffs did not transfer money to the MCCA. Instead, member insurers pay the MCCA's premiums. Moreover, even if the MCCA's premiums are reflected in plaintiffs' no-fault rates, plaintiffs cannot reasonably argue that they did not intend their insurers to obtain a beneficial interest in the rates they pay for no-fault insurance. Consequently, plaintiffs' resulting trust claim failed as a matter of law.

Similarly, to the extent the trial court held that the MCCA was required to disclose records under a constructive trust theory, it erred as a matter of law. A constructive trust is not an independent cause of action; rather, it is an equitable remedy. See *Kammer Asphalt Paving Co v East China Twp Sch*, 443 Mich 176, 188; 504 NW2d 635 (1993), quoting *Ooley v Collins*, 344 Mich 148, 158; 73 NW2d 464 (1955) ("A constructive trust may be imposed 'where such trust is necessary to do equity or to prevent unjust enrichment . . . .' "). Thus, the counts in plaintiffs' complaints that sought to impose a constructive trust were legally insufficient to state a claim. Moreover, a constructive trust may only

be imposed when property "has been obtained through fraud, misrepresentation, concealment, undue influence, duress, taking advantage of one's weakness, or necessities, or any other similar circumstances which render it unconscionable for the holder of the legal title to retain and enjoy the property . . . ." *Id.* (quotation marks and citations omitted). In this case, plaintiffs sought access to the MCCA's records; they did not seek to recover property. Further, plaintiffs failed to plead any facts to indicate that the MCCA obtained property under any of the aforementioned circumstances. In short, plaintiffs' constructive trust argument was devoid of legal merit.

### IV. CONCLUSION

In summary, plaintiffs' claims failed as a matter of law and plaintiffs are not entitled to access the MCCA's records. The MCCA's records are not subject to FOIA disclosure because the plain language of MCL 500.134(4) and (6) expressly exempt the records from FOIA and MCL 500.134(4) does not violate Const 1963, art 4, § 24 or Const 1963, art 4, § 25. In addition, plaintiffs were not entitled to access the MCCA's records pursuant to the holding in *Shavers*, 402 Mich at 554, which is inapplicable in the instant case. Furthermore, plaintiffs did not have a right to access the MCCA's records under the common law because FOIA and MCL 500.134(4) and (6) supplanted the common law. Finally, plaintiffs' resulting and constructive trust theories failed as a matter of law. Given that all of plaintiffs' claims are clearly unenforceable as a matter of law and no factual development could justify recovery, the trial court erred by denying the MCCA's motion for summary disposition under MCR 2.116(C)(8) and in granting partial summary disposition in favor of plain-

tiffs. *Wade*, 439 Mich at 163. Therefore, reversal and remand for entry of an order granting summary disposition in favor of the MCCA is appropriate.

Reversed and remanded for entry of an order awarding summary disposition in favor of the MCCA consistent with this opinion. A public question being involved, no costs awarded. MCR 7.219. We do not retain jurisdiction.

OWENS, P.J., and GLEICHER, J., concurred with BORRELLO, J.