# STATE OF MICHIGAN

# COURT OF APPEALS

TERRI LYNN KLOOSTERMAN,

        Plaintiff-Appellee,

v

STEPHEN EDWARD GORMAN,

        Defendant-Appellant.

UNPUBLISHED
December 16, 2014

No. 317698
Kent Circuit Court
LC No. 99-008460-TZ

Before: DONOFRIO, P.J., and FORT HOOD and SHAPIRO, JJ.

PER CURIAM.

Defendant appeals by delayed leave granted the circuit court's order, which affirmed a referee proposed order granting plaintiff's motion to enforce a marital settlement and separation agreement. For the reasons provided below, we affirm in part, reverse in part, and remand.

The parties were married in 1989 in Grand Rapids, Michigan. Two daughters were born to the marriage: Tayler and Ashley. Pursuant to the Judgment Decree of Dissolution ("judgment") entered by the Clinton County court in Missouri, the parties, who had lived in Missouri, were divorced in April 1996.

The judgment referenced and incorporated a Marital Settlement and Separation Agreement ("agreement"). The agreement included a section 16, which was entitled "Child Support," where defendant agreed to pay plaintiff $800 per month for child support. The section also contained a subheading entitled "Education Expenses," which provides as follows:

> The parties agree that each should assist with the payment of expenses associated with a college education for each of the minor children. Accordingly, the parties agree that, in addition to the foregoing child support, each shall pay and be responsible for his or her pro rata portion of fees, books, room and board, tuition, and all reasonable college expenses for each minor child, said pro rata percentage to be determined by the then prevailing respective percentage of responsibility for each parent for child support as determined by the Missouri Supreme Court child support guidelines.

The agreement further provided that any disputes regarding the children that could not be agreed upon would be referred to mediation and that such a step was a prerequisite to the filing of any motion or action.

-1-

Plaintiff, in August 1995, before the divorce was granted, moved to Grand Rapids, Michigan with the children. And at some point after the divorce, defendant moved to Georgia.

On April 30, 1999, the Clinton County court in Missouri entered a judgment, modifying the previously entered judgment. The modifications were the result of a stipulation between the parties and primarily dealt with visitation and custody issues, given that the parties were not living in the same state. All other aspects of the prior judgment were to remain in effect.

On August 31, 1999, plaintiff filed a complaint with the Kent Circuit Court in Michigan, whose sole purpose was to file the Missouri judgment in the Kent Circuit Court, pursuant to the Uniform Enforcement of Foreign Judgments Act ("UEFJA"), MCL 691.1171 *et seq.* Defendant did not file any responsive pleading to the complaint.

On April 25, 2001, a stipulation and order was filed in the Kent Circuit Court, which provided for the following amendments to the judgment of dissolution:

<u>WAIVER OF KENT COUNTY FRIEND OF THE COURT<br>COLLECTION ENFORCEMENT</u>

IT IS FURTHER ORDERED AND ADJUDGED that the Kent County Friend of the Court shall make no effort and take no steps to collect or enforce the child support provisions of the Judgment of Divorce until further Order of the Court.

<u>CHILD SUPPORT ARREARS</u>

IT IS FURTHER ORDERED AND ADJUDGED that all child support arrearages that have accrued in this matter are herein waived by the parties.

<u>ENFORCEMENT CLINTON COUNTY, MISSOURI</u>

The parties hereto have no objection to the child support provisions of the Judgment of Divorce being collected and enforced through the Friend of the Court for Clinton County, Missouri.

This stipulation was signed by defendant and plaintiff's attorney.

In 2011, Tayler started college at Western Michigan University. For the academic year 2011-2012, defendant paid his share of the college expenses. Then in 2012, Ashley enrolled in college at Michigan State University. At this point, defendant declined to contribute to the expenses associated with Tayler's second year of enrollment and Ashley's first year of college. Pursuant to the judgment and agreement, the parties agreed to mediate this dispute. Defendant, because of his work-related traveling, attended the mediation by phone. The mediator apparently issued a determination; however, defendant failed to comply with the recommendation.

On December 5, 2012, plaintiff filed in the Kent Circuit Court a motion to enforce the marital settlement agreement, specifically, the portion dealing with providing support for college expenses. A hearing was held before a referee on December 14, 2012. Defendant did not respond in any way to plaintiff's motion and was not in attendance at the hearing. The referee granted plaintiff's motion and requested relief. By order entered December 28, 2012, the circuit

court approved the referee's recommendation and entered an order directing defendant to pay to plaintiff the sum of $33,303.28, within 30 days of the entry of the order. This amount represented $30,832.48 in college expenses and $2,470.80 in attorney fees.

On January 4, 2013, defense counsel filed a special appearance on behalf of defendant in order to challenge the court's jurisdiction over him. On that same day, defendant filed an Objection to the Referee Recommendation. Then, on January 17, 2013, defendant filed a First Amended Objection to Referee Recommendation and Alternative Motion to Modify/Terminate Support.

Defendant raised several grounds for objecting to the referee's recommendation, which included the following: a lack of personal jurisdiction, a lack of subject-matter jurisdiction, statute of limitations, and the college education support language was unenforceable as a matter of law because it was too vague and because certain conditions required by Missouri law in order to trigger the obligation had not been satisfied.

On January 25, 2013, the Kent Circuit Court held a hearing. The circuit court found that it had personal jurisdiction over defendant. The court explained:

> I absolutely do find that this court has jurisdiction because [of defendant's] contacts with the court.
>
> You cannot have contact with the court, agree to mediation, go through everything he has with this Court and then say, later on, well no, I don't think there is personal jurisdiction or there is no subject matter jurisdiction. He availed himself to this court. He is subject to the court's jurisdiction. So the jurisdictional arguments I don't believe are appropriate. This is one of the more obvious cases, I think, of somebody coming in and submitting to the Court's jurisdiction.

The circuit court then held that it had subject-matter jurisdiction as well. The court explained that the college education expenses at issue were not "support," per se, but instead were "contractual in nature," which took the issue out of the purview of the UIFSA. Therefore, the court implicitly concluded that plaintiff filing the judgment under the UEFJA was appropriate and bequeathed the court with subject-matter jurisdiction.

The court, however, declined to rule on defendant's arguments related to statute of limitations and the enforceability of the provision because of vagueness or the unfulfillment of any necessary conditions. The court reasoned that defendant "sat on his rights" by not participating at the referee hearing, and such evidence was not "new" evidence that could be introduced at its de novo hearing.

## I. SUBJECT-MATTER JURISDICTION

Defendant argues that the circuit court lacked subject-matter jurisdiction to enforce the college education support provision of the Missouri divorce judgment. "Questions surrounding subject-matter jurisdiction present questions of law and are reviewed de novo." *In re Contempt*

*of Dorsey*, ___ Mich App ___; ___ NW2d ___ (Docket No. 309269, decided September 9, 2014), slip op, p 5.

> Generally, subject-matter jurisdiction is defined as a court's power to hear and determine a cause or matter. More specifically, subject-matter jurisdiction is the deciding body's authority to try a case of the kind or character pending before it, regardless of the particular facts of the case. Subject-matter jurisdiction cannot be waived and can be raised at any time by any party or the court. [*Id.* (slip op at 5) (citations omitted).]

It is well established that "'[c]ircuit courts are courts of general jurisdiction.'" *In re Harper*, 302 Mich App 349, 352; 839 NW2d 44 (2013), quoting *Papas v Gaming Control Bd*, 257 Mich App 647, 657; 669 NW2d 326 (2003). Consequently, "[c]ircuit courts are presumed to have jurisdiction unless the matter in question is specifically excluded" from the court's jurisdiction by law. *BCS Life Ins Co v Commissioner of Ins*, 152 Mich App 360, 367; 393 NW2d 636 (1986), citing Const 1963, art 6 § 13.

Defendant fails to cite any law that specifically excludes circuit courts from having subject-matter jurisdiction to hear a case involving the enforcement of a foreign judgment, even if it is modifiable, as defendant alleges. Defendant, instead, relies on the premise that judgments that are modifiable are not entitled to the full faith and credit protection of the Constitution. See *Sistare v Sistare*, 218 US 1; 30 S Ct 682; 54 L Ed 905 (1910); *Talbot v Talbot*, 99 Mich App 247, 252; 297 NW2d 896 (1980) (stating that rationale is that such judgments may be altered, amended, or modified at some point in the future because of a change in circumstances). While such aspects may render the judgment ultimately *unenforceable*, it does not affect whether the court has the *power or authority* to hear the matter. Defendant "confuses the distinction between whether the court has subject matter jurisdiction and whether the court properly exercised its discretion in applying that jurisdiction." *In re Hatcher*, 443 Mich 426, 438; 505 NW2d 834 (1993).

Therefore, the circuit court had subject-matter jurisdiction to hear plaintiff's motion to enforce the judgment.

## II. PERSONAL JURISDICTION

Whether a court has properly obtained personal jurisdiction over a defendant is a question of law that this Courts reviews de novo. *In re Dearmon*, 303 Mich App 684, 693; 847 NW2d 514 (2014); *W H Froh, Inc v Domanski*, 252 Mich App 220, 225; 651 NW2d 470 (2002).

"'Before a court may obligate a party to comply with its orders, the court must have in personam jurisdiction over the party.'" *In re Contempt of Dorsey*, ___ Mich App at ___ (slip op at 6), quoting *Oberlies v Searchmont Resort, Inc*, 246 Mich App 424, 427; 633 NW2d 408 (2001). Jurisdiction over individuals can be obtained through general personal jurisdiction or limited personal jurisdiction. *Oberlies*, 246 Mich App at 427. Unlike subject-matter jurisdiction, however, personal jurisdiction may be waived. *In re Contempt of Dorsey*, ___ Mich App at ___ (slip op at 6).

-4-

"The exercise of general jurisdiction is possible when a defendant's contacts with the forum state are of such a nature and quality as to enable a court to adjudicate an action against the defendant, even when the claim at issue does not arise out of the contacts with the forum." *Oberlies*, 246 Mich App at 427, citing *Helicopteros Nacionales de Colombia, SA v Hall*, 466 US 408, 414 n 9, 415-416; 104 S Ct 1868; 80 L Ed 2d 404 (1984). MCL 600.701 allows for the state to exercise general personal jurisdiction over an individual when the individual is in the state at the time process is served, when the individual is domiciled in the state at the time process is served, or when the individual consents, subject to the limitations in MCL 600.745. Plaintiff, however, concedes that the circuit court did not have general jurisdiction over defendant.

"When a defendant's contacts with the forum state are insufficient to confer general jurisdiction, jurisdiction may be based on the defendant's specific acts or contacts with the forum." *Oberlies*, 246 Mich App at 427. There is a "two-step analysis" in determining whether a court may exercise limited personal jurisdiction. *Glenn v Valero Energy Corp*, ___ Mich App ___; ___ NW2d ___ (Docket No. 308636, decided June 24, 2014), slip op, p 8.

> First, this Court ascertains whether jurisdiction is authorized by Michigan's long-arm statute. Second, this Court determines if the exercise of jurisdiction is consistent with the requirements of the Due Process Clause of the Fourteenth Amendment. Both prongs of this analysis must be satisfied for a Michigan court to properly exercise limited personal jurisdiction over a nonresident. Long-arm statutes establish the nature, character, and types of contacts that must exist for purposes of exercising personal jurisdiction. Due process, on the other hand, restricts permissible long-arm jurisdiction by defining the quality of contacts necessary to justify personal jurisdiction under the constitution. [*Yoost v Caspari*, 295 Mich App 209, 222-223; 813 NW2d 783 (2012) (citation omitted).]

Our Legislature has provided a long-arm statute, MCL 600.705, to allow courts to take jurisdiction over nonresident individuals under the theory of limited jurisdiction and provides as follows:

> The existence of any of the following relationships between an individual or his agent and the state shall constitute a sufficient basis of jurisdiction to enable a court of record of this state to exercise limited personal jurisdiction over the individual and to enable the court to render personal judgments against the individual or his representative arising out of an act which creates any of the following relationships:
>
> (1) The transaction of any business within the state.
>
> (2) The doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort.
>
> (3) The ownership, use, or possession of real or tangible personal property situated within the state.

-5-

(4) Contracting to insure a person, property, or risk located within this state at the time of contracting.

(5) Entering into a contract for services to be rendered or for materials to be furnished in the state by the defendant.

(6) Acting as a director, manager, trustee, or other officer of a corporation incorporated under the laws of, or having its principal place of business within this state.

(7) Maintaining a domicile in this state while subject to a marital or family relationship which is the basis of the claim for divorce, alimony, separate maintenance, property settlement, child support, or child custody.

A review of the enumerated relationships that can give rise to limited personal jurisdiction shows that none of them applies to defendant. Arguably, the closest one is subsection (1), which simply allows for "[t]he transaction of any business within the state." While defendant did enter into a stipulated order in the circuit court in 2001, this is not a "transaction of any business." In *Oberlies*, this Court interpreted this exact phrase in the context of MCL 600.715(1), which concerns the exercise of personal jurisdiction over nonresident corporate defendants:

> "Transact" is defined as "to carry on or conduct (business, negotiations, etc.) to a conclusion or settlement." *Random House Webster's College Dictionary* (1997). "Business" is defined as "an occupation, profession, or trade . . . the purchase and sale of goods in an attempt to make a profit." *Id.* [*Oberlies*, 246 Mich App at 430.]

Therefore, it is clear that the "transaction" contemplated in MCL 600.705(1) must relate to some commercial endeavor. Because the 2001 stipulation and order was not related to a "business" or commercial transaction, subsection (1) of MCL 600.705 does not apply. Therefore, because none of the provisions in Michigan's long-arm statue applies, Michigan normally would not be able to obtain limited personal jurisdiction over defendant.

However, as mentioned previously, an individual can waive personal jurisdiction. Once one voluntarily submits oneself to the jurisdiction of the court, that person waives all objections to personal jurisdiction and subjects himself to the authority of the court. See *Burger King Corp v Rudzewicz*, 471 US 462, 473 n 14; 105 S Ct 2174; 85 L Ed 2d 528 (1985) ("[B]ecause the personal jurisdiction requirement is a waivable right, there are a variety of legal arrangements by which a litigant may give express or implied consent to the personal jurisdiction of the court.") (quotation marks omitted). Typically, a challenge to personal jurisdiction must "'be raised in a party's first [summary disposition] motion . . . or in the party's responsive pleading, whichever is filed first, or [it is] waived.'" *Robert A Hansen Family Trust v FGH Industries, LLC*, 279 Mich App 468, 477 n 7; 760 NW2d 526 (2008), quoting MCR 2.116(D)(1). Defendant is correct that

he raised the issue of personal jurisdiction in his first response[1] to plaintiff's motion to enforce the Missouri judgment. But defendant overlooks the 2001 stipulation and order he signed years earlier. While defendant argues "[n]othing within the 2001 order indicates that [he] is consenting to Michigan assuming authority over him for post judgment enforcement actions," that is precisely what the order indicated. Defendant willingly agreed to enter an order in the Kent Circuit Court that expressly provided that the court would not enforce the child support provisions of the Missouri judgment "until further Order of the Court." First, the act of entering the stipulation in the court is an overt submission to the court's authority. Second, the stipulation expressly recognizes that while the court will not presently act to enforce the Missouri judgment, it reserves the right to do so in the future. Therefore, defendant stipulating to the entry of the 2001 order in the Kent Circuit Court, where he acknowledged that the court retained power to enforce the judgment in the future, acted to waive the issue of personal jurisdiction. The fact that he later raised the issue of personal jurisdiction in response to plaintiff's motion to enforce the judgment cannot undo the waiver.

## III. JUDICIAL DE NOVO HEARING

Defendant argues that the circuit court abused its discretion when it precluded him from raising legal defenses at the court's de novo hearing. A court's discretionary rulings are reviewed for an abuse of discretion. *Berger v Berger*, 277 Mich App 700, 705; 747 NW2d 336 (2008). A court abuses its discretion when it chooses an outcome falling outside the range of reasonable and principled outcomes or when it makes an error of law. *Thomas M Cooley Law School v Doe 1*, 300 Mich App 245, 263; 833 NW2d 331 (2013).

MCL 552.507(4) and (5) permit judicial review of referee recommendations and provide the following:

> (4) The court shall hold a de novo hearing on any matter that has been the subject of a referee hearing, upon the written request of either party or upon motion of the court. The request of a party shall be made within 21 days after the recommendation of the referee is made available to that party.

> (5) A hearing is de novo despite the court's imposition of reasonable restrictions and conditions to conserve the resources of the parties and the court if the following conditions are met:

> (a) The parties have been given a full opportunity to present and preserve important evidence at the referee hearing.

> (b) For findings of fact to which the parties have objected, the parties are afforded a new opportunity to offer the same evidence to the court as was presented to the

---

[1] We acknowledge that under MCR 2.110(A), the "objection" that defendant filed in response to the referee's proposed order is not a "pleading." But it nonetheless was defendant's first document filed with the court, save for the 2001 stipulation and order.

referee and to supplement that evidence with evidence that could not have been presented to the referee.

Similarly, MCR 3.215(F)(1) and (2) describe how the circuit court has some discretion in conducting the de novo hearing:

(1) The judicial hearing must be held within 21 days after the written objection is filed, unless the time is extended by the court for good cause.

(2) To the extent allowed by law, the court may conduct the judicial hearing by review of the record of the referee hearing, but *the court must allow the parties to present live evidence at the judicial hearing*. The court may, in its discretion:

(a) prohibit a party from presenting evidence on findings of fact to which no objection was filed;

(b) determine that the referee's finding was conclusive as to a fact to which no objection was filed;

(c) prohibit a party from introducing new evidence or calling new witnesses unless there is an adequate showing that the evidence was not available at the referee hearing;

(d) impose any other reasonable restrictions and conditions to conserve the resources of the parties and the court. [Emphasis added.]

At the judicial hearing, defendant made several arguments, in addition to the jurisdictional issues already discussed, which included a statute of limitations defense, whether the college education provision was enforceable under Missouri law, and whether the referee applied the correct law in determining the amount of the obligation. In response, plaintiff argued that none of this was "new information" and therefore, pursuant to the court rules, cannot be presented at the court's de novo review. The circuit court agreed with plaintiff and stated that defendant was not presenting any "new evidence" because he could have done so at the referee hearing. The circuit court thought that defendant "sat on his rights" by not participating in the referee hearing. As a result, the circuit court concluded, "[T]his is not new evidence; this all should have been brought up before. So I need to deny that part of the motion."

The circuit court erred as a matter of law in two aspects. First, the court rule that plaintiff and the circuit court relied on, MCR 3.215(F)(2)(c), only allows the reviewing court to limit the introduction of "new evidence or calling new witnesses unless there is an adequate showing that the evidence was not available at the referee hearing." The purpose of the rule is highlighted in MCL 552.507(5)(b), which explains that in order "to conserve the resources of the parties and the court," the parties are allowed to supplement the evidence that was previously presented at the referee hearing "with evidence that could not have been presented to the referee." By the plain language of the rule and the statute, this restriction only applies to the introduction of *evidence*, not legal arguments or legal authority. Therefore, it was an error of law when the circuit court precluded defendant from making certain legal arguments just because they could have been raised at the referee hearing.

-8-

Second, as this Court has previously stated, "The purpose of a de novo hearing is for the trial court to 'render its own decision based on the evidence, independent of any prior . . . ruling.'" *Sturgis v Sturgis*, 302 Mich App 706, 708; 840 NW2d 408 (2013), quoting *Heindlmeyer v Ottawa Co Concealed Weapons Licensing Bd*, 268 Mich App 202, 219; 707 NW2d 353 (2005); see also MCL 552.507(6)(a) (providing that the de novo hearing involves a "new decision," regardless if any additional evidence was offered at the hearing). Here, the circuit court did not make its own independent determination related to whether under the law defendant owed plaintiff for any college support payments. The only determinations the court made were that it had personal jurisdiction over defendant and that it had subject-matter jurisdiction to hear the matter. A fair reading of the hearing transcript shows that simply because defendant did not appear at the referee hearing, the circuit court denied his objection and upheld the referee's recommendation, akin to a default judgment. This is an abuse of discretion because it was an error of law for the court not to render its own independent decision based on the evidence. *Sturgis*, 302 Mich App at 708.

We also note that the circuit court may have not understood the discretion it has to hear new evidence at the hearing. From the court's comments, it appears that it thought that any new evidence was barred from being admitted. To the extent that the circuit court thought this, it is incorrect. MCR 3.215(F)(2) provides that "the court *must* allow the parties to present live evidence at the judicial hearing." (Emphasis added.) But while it must allow the introduction of evidence, it has some discretion in limiting the evidence, as described in MCR 3.215(F)(2)(c). Nevertheless, it is important to note that this limitation is discretionary, as indicated in the text of the court rule.

## IV. STATUTE OF LIMITATIONS

Generally, an issue is preserved for appellate review if it was raised before and decided by the circuit court. *Michigan's Adventure, Inc v Dalton Twp*, 290 Mich App 328, 330 n 1; 802 NW2d 353 (2010). Here, the preservation requirements are not met because, while defendant raised the statute of limitations issue, the circuit court never rendered a decision on that issue. However, this Court may overlook preservation requirements when a party raises the issue, the trial court fails to address it, and the issue involves a question of law and the facts necessary for its resolution have been presented. *Coalition Protecting Auto No-Fault v Mich Catastrophic Claims Ass'n*, 305 Mich App 301, 312; 852 NW2d 229 (2014). Thus, because the necessary facts are not disputed and the issue is one of law, we will review it. When the facts are not in dispute, whether a claim is barred by the applicable statute of limitations presents a question of law, which this Court reviews de novo. *Trentadue v Buckler Lawn Sprinkler*, 479 Mich 378, 386; 738 NW2d 664 (2007).

Defendant argues that MCL 600.5809(3) establishes a 10-year limitations period that starts to run at the time the judgment is registered in the state. MCL 600.5809 provides, in pertinent part, the following:

> (3) Except as provided in subsection (4), the period of limitations is 10 years for an action founded upon a judgment or decree rendered in a court of record of this state, or in a court of record of the United States or of another state of the United States, from the time of the rendition of the judgment or decree. . . .

(4) For an action to enforce a support order that is enforceable under the support and parenting time enforcement act, [MCL 552.601 *et seq.*], the period of limitations is 10 years from the date that the last support payment is due under the support order regardless of whether or not the last payment is made.

Thus, if subsection (3) applies, then the 10-year period would start to run at the time the judgment was entered, but if subsection (4) applies, then "the ten-year period does not begin to run until the day the last child support payment is due." *Rzadkowolski v Pefley*, 237 Mich App 405, 411; 603 NW2d 646 (1999).

Defendant contends that subsection (3) governs because plaintiff never filed the judgment under the UIFSA. However, the UIFSA, MCL 552.1101 *et seq.*, is a distinct act from the support and parenting time enforcement act "("SPTEA"), MCL 552.601 *et seq.*, that is referenced in MCL 600.5809(4). Thus, the fact that the judgment was not filed under the UIFSA is not relevant for this purpose. The only relevance of not filing under the UIFSA is that plaintiff cannot avail herself of any of the remedies under that particular act. However, the act itself makes it clear that the remedies provided by it merely are "cumulative and do[] not affect the availability of a remedy under other law." MCL 552.1105. Consequently, plaintiff still could seek any other remedies under the law in attempting to enforce the judgment.

Thus, the next question is whether the Missouri judgment is a support order that is enforceable under the SPTEA. MCL 552.602(ff) of the SPTEA defines a "support order" as "an order entered by the circuit court for the payment of support, whether or not a sum certain." And MCL 552.602(ee)(*i*) defines, in pertinent part, "support" as "[t]he payment of money for a child or a spouse ordered by the circuit court, whether the order is embodied in an interim, temporary, permanent, or modified order or judgment. Support may include payment of the expenses on medical, dental, and other health care, child care expenses, and educational expenses." As discussed earlier, the judgment was filed in Michigan under the UEFJA, which provides that the judgment will be treated "in the same manner as a judgment of the circuit court . . . of this state." MCL 691.1173. Therefore, the Missouri judgment is considered to have been entered by a Michigan circuit court. But the parties disagree on whether the judgment, or more specifically, the college education provision of the judgment, is an order for support or, instead, a mere contractual agreement.

In Michigan, a court may order postmajority support for the benefit of a child between the ages of 18 and 19½ under certain circumstances. See MCL 552.605b. However, in Michigan, there is no statutory provision for ordering support after the child reaches 19½ years of age if the parent objects. In any event, a parent can agree to pay postmajority support, e.g. college tuition, and such is enforced in this state under contract principles. *Smith v Smith*, 433 Mich 606, 624 n 28; 447 NW2d 715 (1989); *Aussie v Aussie*, 182 Mich App 454; 452 NW2d 859 (1990).

However, the rules governing postmajority support in Missouri are slightly different. Under VAMS 452.340, child support is to be paid for minor children until they reach age 18, at which time the obligation of the parent paying the support ends. VAMS 452.340.3(5). Two exceptions can extend the payment of support, but the applicable one is found in VAMS 452.340.5, which allows for support to continue if the child is enrolled in at least twelve credit

-10-

hours per semester in a secondary education program. Importantly, contrary to the circuit court's determination, college educational expenses are considered to be a form of child support. *Appling v Appling*, 156 SW3d 454, 460 (Mo App, 2005).

Considering the foregoing, the provision of the Missouri judgment at issue was, in fact, an order for child support, and not just a contractual obligation.[2] Consequently, its enforcement in Michigan was subject to the statute of limitations provided in MCL 600.5809(4). But because MCL 600.5809(4) provides that the period of limitations does not start to run until the last support payment is due, and not when the judgment was entered, it is clear that plaintiff is not barred by the statute of limitations in seeking enforcement.

Moreover, we note that even if the applicable statute of limitations was MCL 600.5809(3) and had expired by the time the expenses in dispute accrued in fall 2012, defendant revived the limitations period when he made payments on the college educational support obligations for Tayler's first year of college. It is undisputed that defendant made his requisite educational expense payments for Tayler for the 2011-2012 academic year. When a party makes partial payment on a debt after the expiration of the applicable statute of limitations, those partial payments can serve as an acknowledgment of the debt and a waiver of a statute of limitations defense. *Wayne Co Social Servs Dir v Yates*, 261 Mich App 152, 156; 681 NW2d 5 (2004); *Alpena Friend of the Court v Durecki*, 195 Mich App 635, 638; 491 NW2d 864 (1992). As our Supreme Court has explained, "[A] partial payment restarts the running of the limitations period unless it is accompanied by a declaration or circumstances that rebuts the implication that the debtor by partial payment admits the full obligation." *Yeiter v Knights of St Casimir Aid Society*, 461 Mich 493, 497; 607 NW2d 68 (2000). Therefore, even if the applicable limitations period had lapsed, defendant revived it when he fully paid his educational expense obligations in 2011. Thus, the expenses for the following academic year easily were within the restarted limitations period.

## V. CONDITIONS FOR OBLIGATION TO CONTINUE

Defendant next argues that because certain conditions were not met, his obligation to pay the college education expenses has been terminated. The issue is not preserved because, while defendant raised the lack of the fulfillment of the necessary conditions precedent to trigger his obligation for college education support, the circuit court never rendered a decision on that issue. *Michigan's Adventure, Inc*, 290 Mich App at 330 n 1. However, this Court may overlook preservation requirements when a party raises the issue, the trial court fails to address it, and the issue involves a question of law and the facts necessary for its resolution have been presented. *Coalition Protecting Auto No-Fault*, 305 Mich App at 312. Here, when the circuit court precluded defendant from raising the underlying argument, it foreclosed the possibility of any evidence being introduced on the matter. Consequently, we are unable to render a decision on the merits of this legal defense. But because there are legal issues that likely will arise on remand, we will review the relevant issues of law.

---

[2] Though not dispositive, we also note that the educational expenses provision at issue is located under a section entitled "Child Support" in the parties' agreement.

Initially, plaintiff contends that defendant is precluded from raising any defenses against enforcing the judgment because the judgment never was appealed. Plaintiff also contends that the doctrine of res judicata prevents Michigan from interfering with the enforcement of the Missouri judgment. While it is true that a defendant cannot relitigate issues that have been tried already, a defendant can raise defenses against a judgment's enforcement that could have been raised in the state that rendered the judgment. See *Ward v Hunter Machinery Co*, 263 Mich 445, 457; 248 NW 864 (1933). Under the UEFJA, once a judgment is filed in Michigan under MCL 691.1173, a prima facie case for its enforcement in Michigan is made, and the defendant has the burden of proving a defense to its enforcement. See *Williams v Crutcher*, 298 P3d 1184, 1186 (NM App, 2013). Such defenses include lack of personal or subject-matter jurisdiction, fraud in the procurement of the judgment, lack of due process, satisfaction, or other grounds that make the judgment invalid or unenforceable may be raised. See *id.*; 30 Am Jur 2d, Executions § 787. Here, defendant has claimed that the judgment is unenforceable as a matter of law, which is a valid defense.

"'The Full Faith and Credit Clause requires that a foreign judgment be given the same effect that it has in the state of its rendition.'" *Blackburne & Brown Mortg Co v Ziomek*, 264 Mich App 615, 620; 692 NW2d 388 (2004), quoting *Jones v State Farm Mut Auto Ins Co*, 202 Mich App 393, 406; 509 NW2d 829 (1993). Thus, the Missouri judgment must be given the same effect that it has under the laws of Missouri.

As noted earlier, under Missouri law, child support is to be paid for minor children until they reach age 18, at which time the obligation of the parent paying the support ends. VAMS 452.340.3(5). However, "[i]f the child is attending secondary school, the child support obligation continues until the child completes the program or turns twenty-one, whichever occurs first." *Shands v Shands*, 237 SW3d 597, 600 (Mo App, 2007); see also VAMS 452.340.5. For this exception to apply, the child must be enrolled in school not later than October 1 following graduation from high school. VAMS 452.340.5. Furthermore,

> [t]o remain eligible for such continued parental support, at the beginning of each semester the child shall submit to each parent a transcript or similar official document provided by the institution of vocational or higher education which includes the courses the child is enrolled in and has completed for each term, the grades and credits received for each such course, and an official document from the institution listing the courses which the child is enrolled in for the upcoming term and the number of credits for each such course. [VAMS 452.340.5.]

The statute further provides that upon a request for the child's grades by the noncustodial parent, the child has 30 days to provide documentation of the grades from the educational institution. VAMS 452.340.5.

Under Missouri law, parties may contract to provide child support beyond the minimum requirements of VAMS 452.340. *Shands*, 237 SW3d at 600, citing *Kocherov v Kocherov*, 775 SW2d 539, 540 (Mo App, 1989). But when a parent contractually agrees to do so, he does not simultaneously contract away the documentation/notification requirements of VAMS 452.340.5. *Shands*, 237 SW3d at 601. Thus, in Missouri, where an agreement or dissolution judgment does not address the notification requirements of section 452.340.5, the statute controls and can result

in extinguishing a parent's obligation to pay for a college education. *In re Marriage of Noland-Vance*, 344 SW3d 233, 239 (Mo App, 2011). This is true even if the agreement provides that the parent will pay for the child's education "until she has completed college." See *Shands*, 237 SW3d at 602. Put another way, if a child seeks to enforce a contractual obligation to pay college tuition, she must keep her parent informed of her progress pursuant to the provisions of VAMS 452.340.5.

However, failure to comply with the above requirements does not result in an automatic release of a parent's obligations. Instead, it is within the court's discretion to terminate the obligations. The statute provides that "[i]f the child fails to produce the required documents, payment of child support *may* terminate without the accrual of any child support arrearage and shall not be eligible for reinstatement." VAMS 452.340.5 (emphasis added); see also *In re Marriage of Noland-Vance*, 344 SW3d at 239 (noting "*if* the trial court decides to terminate child support, as *permitted* by [VAMS 452.340.5]") (emphasis added).

Here, defendant alleges that neither child in the 2011-2012 academic year met all of the necessary conditions precedent to obligate defendant for the at-issue college expenses. But because the issue was never fully developed at the circuit court (or the referee hearing), there is no evidence to allow defendant to establish that the conditions were not satisfied. In fact, with (1) defendant not participating in the referee hearing, (2) no evidence being submitted at the referee hearing, and (3) no evidence being submitted at the circuit court hearing, the record is devoid of any actual evidence related to this issue.

However, the lack of evidence is not surprising since the circuit court's ruling, that the argument/defense was not permissible, obviated the need to introduce evidence on the topic. Put another way, when the circuit court made it clear that it was not going to consider any of defendant's arguments because they should have first been brought in front of the referee, it was apparent that defendant thereafter requesting to submit evidence on this issue would have served no purpose.

Therefore, consistent with Part III of this opinion, on remand, the circuit court is to evaluate this defense as part of its de novo review, while properly applying MCL 552.507 and MCR 3.215(F)(2).

## VI. UNENFORCEABILITY DUE TO VAGUENESS

Defendant next argues that the college education provision is too vague to be enforceable under Missouri law. Once again, the preservation requirements are not met because, while defendant raised the issue of the language being too vague to be enforceable, the circuit court never rendered a decision on that issue. *Michigan's Adventure, Inc*, 290 Mich App at 330 n 1. But because the necessary facts are not disputed and the issue is one of law, we will address it. *Coalition Protecting Auto No-Fault*, 305 Mich App at 312.

Whether a provision in a judgment is enforceable is a question of law that this Court reviews de novo. See *Laffin v Laffin*, 280 Mich App 513, 517; 760 NW2d 738 (2008). This Court also reviews questions concerning the applicability of the UEFJA and the Full Faith and

Credit Clause of the United States Constitution de novo. *Hare v Starr Commonwealth Corp*, 291 Mich App 206, 213; 813 NW2d 752 (2011).

As noted earlier, the Full Faith and Credit Clause requires foreign judgments to be given the same effect that they have in the state of their rendition. *Blackburne & Brown Mortg Co*, 264 Mich App at 620. Plus, while defendant is not allowed to relitigate the issues of the judgment, he is allowed to attack its enforceability. See *Ward*, 263 Mich at 457; *Williams*, 298 P3d at 1186; 30 Am Jur 2d, Executions § 787.

Under Missouri law, a judgment, in general, must be definite and certain as to the amount for which it is rendered. *Echele v Echele*, 782 SW2d 430, 434 (Mo App, 1989). But this definiteness and certainty requirement has been relaxed, especially in the context of maintenance and child support awards. *Pratt v Ferber*, 335 SW3d 90, 94 (Mo App, 2011).

> [I]f a dissolution or modification decree is uncertain or indefinite in the sense that it lacks pristine specificity and (a) a settlement agreement is incorporated in the decree which can make the decree certain by motion or hearing determining the exact amounts due, or [(b)] the decree itself can be made certain by motion or hearing to determine the exact amount due by ministerial computation or evidence, the decree, upon being reduced to certainty, is sufficiently certain and definite so as to be enforceable. [*Echele*, 782 SW2d at 436.]

Thus,

> [p]ursuant to *Echele*, a decree or order establishing child support is enforceable if it sufficiently identifies the categories of items for which a parent is financially responsible, using limiting criteria so that, although the exact amount owed by the parent cannot be determined from the fact of the order or decree, the parent's obligation is not open-ended and the exact amount due can be determined by ministerial computation or evidence presented at a hearing.

The pertinent language at issue in the judgment is as follows:

> The parties agree that each should assist with the payment of expenses associated with a college education for each of the minor children. Accordingly, the parties agree that, in addition to the foregoing child support, each shall pay and be responsible for his or her pro rata portion of fees, books, room and board, tuition, and all reasonable college expenses for each minor child, said pro rata percentage to be determined by the then prevailing respective percentage of responsibility for each parent for child support as determined by the Missouri Supreme Court child support guidelines.

First, we note that the categories of items that the parents were required to pay (fees, books, room and board, tuition, and all reasonable college expenses) are sufficiently identifiable. These categories are in stark contrast with the general language the Missouri courts have found to be too vague, such as "pay for college education" and "all school payments." *Echele*, 782 SW2d at 436. The *Echele* court noted that these types of phrases were too vague because they

-14-

"may include tuition, books, room and board, travel, social activities and a host of other items." *Id.* Thus, reference in the agreement to specific categories of what encompasses "college education" was sufficient under Missouri law. See *id.* at 437 (suggesting that defining the term "cost" to include "tuition, fees, books, dormitory costs for room and board" would be sufficiently specific).

However, the remaining question is whether the support arrangement "sets out sufficient limiting criteria to allow computation of the exact amount owed through ministerial computations or evidence presented at a hearing of actual amounts spent." *Pratt*, 335 SW3d at 95. It is clear that no such standards were included in the college education provision. The language in the present case is similar to the language at-issue in *Echele*. In *Echele*, the language provided that the father was to pay one-half the cost of "vocational/technical school or one-half the cost of post-secondary education at a state supported college or university with respect to each of the parties' minor children. Said cost shall include the cost of tuition, books, and room and board." *Echele*, 782 SW2d at 433. The order further provided that "[i]n the event either or both parties' minor children choose to attend a private college or university, then [the father] shall be responsible for one-third the cost of tuition, books and dormitory fees (room and board) of said college or university." *Id.* The *Echele* court held that the order was vague and indefinite and remanded for the trial court to fashion a more appropriate order. *Id.* at 437. The court explained that the order did not "set forth any limiting criteria as to costs at a specific vocational, technical school or state or private college or university. The costs of attending any such institution vary greatly, and, as such, the order is open-ended. In this sense it is vague and indefinite." *Id.* The court went on to provide an example of what an enforceable order could look like:

> Husband shall pay one-half of the cost each year for each child attending a post-secondary college, university, or vocational/technical school, state or private, subject to the following limitations:
>
> 1) "Cost" shall include tuition, fees, books, dormitory costs for room and board. It does not include room and board while residing with either parent.
>
> 2) The "one-half" husband is to pay shall be the actual cost to the child, i.e., if child receives a scholarship or other aid which reduces cost, the "cost" does not include the amount of such scholarship or aid. For this purpose, loans to the student shall not be considered a "scholarship or other aid."
>
> 3) The child must carry at least a minimum number of credit hours each semester which, according to the institution the child attends, constitutes a full load.
>
> 4) The maximum cost which husband shall be responsible for in any given school year will be one-half of the then cost for tuition, fees, books, and dormitory costs for room and board at the University of Missouri at Columbia, regardless of what institution the child attends.
>
> 5) The husband shall not be responsible for paying for more than eight semesters at a college or university. [*Id.*]

-15-

In our view, the most significant aspect is item (4), which sets an ascertainable hard cap for one's liability for any given year. This, arguably, does the most to address the open-endedness that the Missouri courts have identified as being objectionable.

Similarly, in *Fulton v Adams*, 924 SW2d 548, 551 (Mo App, 1996), the court was confronted with an order that provided that both parents were to "pay equally the college costs for the minor child . . . including tuition, books, fees, room & board and any incidental expenses relating to her college education," and if the child attended private college, then the petitioner would be only responsible for one-quarter of the tuition and any incidental expenses. The court determined that without any standards to restrict the educational expenses to a specific state or private college or university, the order was too indefinite. *Id.* at 552. The court also rejected the notion that any uncertainty could be remedied through reference to evidence presented at trial. *Id.* The court explained, "An order which is otherwise indefinite and vague does not acquire certainty merely because the court has heard evidence which, if incorporated into the order, would provide confidence in the amount owed. The vagueness of the order cannot be remedied by searching the record for possible explanations of its meaning." *Id.*

In the present case, there are no limiting criteria contained in the judgment. Consequently, like the decrees in *Echele* and *Fulton*, the college education provision in the judgment is too indefinite to be enforceable. But, contrary to what defendant asserts, the remedy is not to make the provision void. Instead, on remand, the circuit court is "to fashion a proper order regarding college expenses." *Id.* at 554; *Echele*, 782 SW2d at 437.

## VII. CONCLUSION

We affirm the circuit court's determination that it possessed personal jurisdiction over defendant and subject-matter jurisdiction to hear plaintiff's motion to enforce the judgment.

We vacate the remainder of the circuit court's order because it simply adopted the referee's recommendations without conducting an independent, de novo review.

We reverse the circuit court's determination that it was legally precluded from hearing arguments and evidence that were not presented at the referee hearing. As discussed in Part III of this opinion, MCR 3.215(F)(2)(c) gives the circuit court discretion to limit the introduction of some *evidence*, but this does not apply to legal arguments. Further, this exercise in discretion is an exception to the general rule that the circuit court *must* allow the parties to present live evidence.

We remand for the circuit court to conduct its independent de novo review from the referee hearing. While we have already ruled on some of the issues of law that are relevant, consistent with Part V of this opinion, the circuit court will need to evaluate defendant's claim of whether the conditions precedent were satisfied to maintain his obligations. We are not unmindful that other alternatives or concepts may be employed by the parties and the court on remand, but we leave such discussion to the parties and the court as the issues are developed. If the circuit court decides that they were not satisfied, it then needs to determine if the obligations should be terminated under Missouri law. If the obligations are not terminated, then the circuit

court, pursuant to Part VI of this opinion, will have to reform the order to make it enforceable. We do not retain jurisdiction.

No costs, as neither party prevailed in full. MCR 7.219.

/s/ Pat M. Donofrio
/s/ Karen M. Fort Hood
/s/ Douglas B. Shapiro