# STATE OF MICHIGAN

# COURT OF APPEALS

COALITION PROTECTING AUTO NO-FAULT,
BRAIN INJURY ASSOCIATION OF
MICHIGAN, ILENE IKENS, RICHARD IKENS,
KENNETH WISSER, SUSAN WISSER,
GREGORY WOLFE, and KAREN WOLFE,

      Plaintiffs-Appellees/Cross-
      Appellants,

v

MICHIGAN CATASTROPHIC CLAIMS
ASSOCIATION,

      Defendant-Appellant/Cross-
      Appellee.

FOR PUBLICATION
August 25, 2016
9:00 a.m.

No. 314310
Ingham Circuit Court
LC No. 12-000068-CZ

ON REMAND

Before: OWENS, P.J., and BORRELLO and GLEICHER, JJ.

BORRELLO, J.

Following oral argument, on October 16, 2015, our Supreme Court, in lieu of granting leave to appeal, vacated in part this panel's decision in *Coalition Protecting Auto No-Fault v Mich Catastrophic Claims Ass'n*, 305 Mich App 301; 852 NW2d 229 (2014). The Supreme Court vacated that portion of this Court's opinion "holding that MCL 500.134(4) does not violate art 4, § 25 of the Michigan Constitution." *Coalition Protecting Auto No-Fault v Mich Catastrophic Claims Ass'n*, 498 Mich 896; 870 NW2d 70 (2015). The Court remanded the matter to this Court for "reconsideration of this issue," and further directed this Court, on remand, "to decide the issue whether the MCCA is a 'public body' subject to the Freedom of Information Act, MCL 15.231 *et seq.*, under MCL 15.232(d)." *Id.* Specifically, our Supreme Court instructed this Court on remand to

> [c]ompare MCL 15.232(d)(iv) (a "public body" includes "[a]ny other body which is created by state or local authority") and *League Gen Ins Co v Mich Catastrophic Claims Ass'n*, 435 Mich 338, 351; 458 NW2d 632 (1990) (holding that the MCCA is not a "state agency" but a "private association"); see also 1988 PA 349, § 2 (providing "legislative intent" pertaining to the status of the MCCA).

-1-

The Court of Appeals shall then reconsider whether MCL 500.134(4) violates art 4, § 25 in light of its resolution of that issue. [*Id.*]

Our Supreme Court denied leave to appeal in all other respects. *Id.* For the reasons set forth in this opinion, we hold that the Michigan Catastrophic Claims Association (MCCA) is a public body for purposes of FOIA, that the enactment of MCL 500.134(4) did not violate Const 1963, art 4 § 25, and that MCCA's records are exempt from disclosure under MCL 500.134(4) and (6)(c).

## I. BACKGROUND

As discussed in this Court's prior opinion, the appeal in this matter arose from the request of plaintiffs, Coalition Protecting Auto No-Fault (CPAN), Brain Injury Association of Michigan (BIAMI), and individual plaintiffs to inspect certain records of defendant MCCA, under the Freedom of Information Act (FOIA), MCL 15.231 *et seq.*

Explaining the origins of the MCCA, this Court noted:

The MCCA was created by the Legislature to protect no-fault automobile insurers from catastrophic losses arising from their obligation to pay or reimburse no-fault policyholders' lifetime medical expenses. [*League Gen Ins*, 435 Mich at 340-341]. As a precondition to writing no-fault insurance in Michigan, every insurer must be a member of the MCCA. MCL 500.3104(1). Member insurers are required to pay annual premiums to the MCCA, MCL 500.3104(7), and in turn, the MCCA indemnifies its members for their "ultimate loss sustained under personal protection insurance coverage in excess [of a fixed statutory amount,]" MCL 500.3104(2). [*Coalition Protecting Auto No-Fault*, 305 Mich App at 304.]

The factual underpinnings of this appeal began in 2011 with CPAN initiating a FOIA request, asking the MCCA for "information concerning 'all' open and closed claims 'serviced by' the MCCA." *Id.* Included within the information requested by CPAN were "the ages of claimants, the dates of injuries, when claims were closed, and the total amounts paid." *Id.* The MCCA declined CPAN's request, asserting that it was " 'expressly exempted from FOIA requests' by MCL 500.134," specifically citing MCL 500.134(4) and (6)(c). *Id.* at 304-305.

Shortly thereafter, CPAN initiated a lawsuit against MCCA seeking to compel the disclosure of the previously requested and denied information. Concurrently, BIAMI and the named individual plaintiffs filed a separate lawsuit against the MCCA after the MCCA denied a request for information similar to that requested by CPAN. The cases were consolidated pursuant to a stipulation by the parties and CPAN was permitted to file an amended complaint. *Coalition Protecting Auto No-Fault*, 305 Mich App at 305.

Although CPAN alleged four counts in its complaint, for purposes of this remand we need only address CPAN's assertion that MCL 500.134 "violated Const 1963, art 4, § 25, because the statute amended FOIA by exempting the MCCA from FOIA without reenacting and republishing FOIA[.]" *Coalition Protecting Auto No-Fault*, 305 Mich App at 305. MCCA filed a motion for summary disposition pursuant to MCR 2.116(C)(8) and (10). CPAN filed a cross-

motion for summary disposition under MCR 2.116(I)(2).[1]  The trial court granted partial summary disposition in favor of CPAN, BIAMI, and the individual plaintiffs under MCR 2.116(C)(8), denying the motions "to the extent they sought disclosure of information concerning individual claimants." *Coalition Protecting Auto No-Fault*, 305 Mich App at 306.  The trial court denied MCCA's motion for summary disposition.  Specifically, the trial court held:

> that the MCCA was a "public body" for purposes of FOIA because the MCCA was "created entirely by statute."  The court concluded that MCL 500.134 did not exempt the MCCA's records from FOIA, stating:
>
> > MCL 500.134 does not contain any specific references regarding information exempt from disclosure.
> >
> > Secondly, the plain language of section (4) . . . does not indicate that the legislature intended for a "whole sale" carve out exemption of all MCCA records because there is a general cross reference to MCL 15.243 (A record of an association or facility shall be exempted from disclosure <u>pursuant to section 13 of the freedom of information act</u>. . . .)  The fact that the Legislature used the phrase "pursuant to section 13" of FOIA, rather than specifically indicating that all MCCA records are exempt under 15.243(d) . . . tends to show that the Legislature intended for information to be exempt from FOIA only if such information came within one of the specified exemptions in MCL 15.243.  [Emphasis in original.]  [*Coalition Protecting Auto No-Fault*, 305 Mich App at 306-307.]

The trial court also found that MCCA's records were subject to disclosure pursuant to alternate theories raised by CPAN and BIAMI, which we need not address in this opinion based on the specificity of our Supreme Court's remand order.  *Coalition Protecting Auto No-Fault*, 498 Mich at 896.

On March 8, 2013, this Court granted the MCCA's application for leave to appeal and request for a stay of proceedings.[2]  CPAN, BIAMI, and the individual plaintiffs also filed a cross-appeal.

On May 20, 2014, this Court issued an opinion that reversed the ruling of the trial court and remanded "for entry of an order awarding summary disposition in favor of the MCCA."

---

[1] The trial court construed this as a motion for summary disposition under MCR 2.116(C)(8).  BIAMI and the individual plaintiffs sought summary disposition under MCR 2.116(C)(9) and (10), but later withdrew their motion under MCR 2.116(C)(10).  *Coalition Protecting Auto No-Fault*, 305 Mich App at 306.

[2] *Coalition Protecting Auto No-Fault v Mich Catastrophic Claims Assoc*, unpublished order of the Court of Appeals, entered March 8, 2013 (Docket No. 314310).

*Coalition Protecting Auto No-Fault*, 305 Mich App at 303. In reversing the trial court, this Court *assumed* that the MCCA "is a public body for purposes of FOIA" and found that "the MCCA is not required to disclose any of its records because the records are expressly exempted from FOIA [by MCL 500.134(4) and (6)(c)]." *Id.* at 309. Citing MCL 15.243(1)(d), this Court noted that FOIA "lists various types of records and information that a public body may exempt from the act's disclosure requirements." *Id.* In addition, as part of the Insurance Code, MCL 500.100 *et seq.*, MCL 500.134 "specifically describes and exempts the MCCA's records from FOIA disclosure[.]" *Id.* at 310. In reversing the trial court's ruling, this Court explained:

> Applying the plain language of MCL 500.134(4) and (6), we conclude that the trial court erred as a matter of law by holding that the MCCA's records were not exempt from FOIA. Subsection (4) unambiguously exempts "[a] record of an association or facility" from disclosure, and subsection (6)(c) defines an "association or facility" to include the MCCA. When read together, the subsections provide that "a record of [the MCCA] shall be exempted from disclosure pursuant to section 13 of [FOIA]," thus specifically describing and exempting the MCCA's records from disclosure. These provisions work in accordance with § 13 of FOIA, which permits a public body to exempt from disclosure "[r]ecords or information specifically described and exempted . . . by statute." MCL 15.243(1)(d). There is no ambiguity in these provisions: subsections (4) and (6) clearly mandate that if "a record" of the MCCA is at issue, it "shall be exempted from disclosure pursuant to section 13 of [FOIA]." See *Old Kent Bank v Kal Kustom Enterprises*, 255 Mich App 524, 532; 660 NW2d 384 (2003) ("The word 'shall' is generally used to designate a mandatory provision. . . ."). [*Coalition Protecting Auto No-Fault*, 305 Mich App at 310-311.]

This Court also examined the contention on cross-appeal that MCL 500.134(4) could not exempt the records of the MCCA from disclosure because the cited statutory provision violated art 4, § 25 of the constitution by amending FOIA without the requisite republication. Const 1963, art 4, § 25 states:

> No law shall be revised, altered or amended by reference to its title only. The section or sections of the act altered or amended shall be re-enacted and published at length.

In rejecting CPAN's argument, this Court explained:

> MCL 500.134(4) did not revise, alter, or amend FOIA. Rather, FOIA contemplates statutory exemptions. Specifically, § 13(1)(d) provides in pertinent part that "[a] public body may exempt from disclosure as a public record under this act . . . [r]ecords or information specifically described and exempted from disclosure by statute." MCL 15.243(1)(d). By including this language, the Legislature drafted FOIA in such a way that future statutory exemptions would not constitute revisions to or amendments of FOIA, but instead would work pursuant to FOIA. Therefore, when the Legislature enacted MCL 500.134(4), there was no duty to reenact and republish FOIA. [*Coalition Protecting Auto No-Fault*, 305 Mich App at 313-314.]

This Court also rejected alternative arguments challenging the constitutional validity of MCL 500.134. *Id.* at 314-316. Hence, this Court ruled, in relevant part:

> In sum, the plain language of MCL 500.134(4) and (6) exempts the MCCA's records from FOIA, and MCL 500.134(4) does not violate Const 1963, art 4, § 24 or Const 1963, art 4, § 25. The trial court therefore erred as a matter of law by holding that the MCCA was required to disclose any of its records under FOIA. [*Id.* at 316.]

CPAN filed a motion for reconsideration challenging, in part, this Court's assumption "without deciding that it was permissible for the Legislature to statutorily exempt itself from the constitutional limitation upon its lawmaking authority by placing in FOIA a provision (MCL 15.243(1)(d)) which allows exemptions to FOIA by inserting those exemptions in other statutes." This Court denied the motion for reconsideration.[3] CPAN next filed an application for leave to appeal to the Michigan Supreme Court. As noted above, following oral argument, our Supreme Court vacated in part this Court's opinion "holding that MCL 500.134(4) does not violate art 4, § 25 of the Michigan Constitution," and remanded the case to this Court. *Coalition Protecting Auto No-Fault*, 498 Mich at 896.

On remand, this Court is required to engage in a two-part analysis. First, we are directed to evaluate "whether the MCCA is a 'public body' subject to the Freedom of Information Act . . . under MCL 15.232(d)." *Coalition Protecting Auto No-Fault*, 498 Mich at 896. As part of this step in the analysis, we are instructed to compare MCL 15.232(d)(iv) and our Supreme Court's holding in *League Gen Ins*, 435 Mich at 351, in which the Court determined that the MCCA was not a "state agency" but a "private association" for purposes of the Administrative Procedures Act (APA), MCL 24.201 *et seq*. In ascertaining whether the MCCA is a public body, we are also directed to consider 1988 PA 349, § 2. Once we have determined whether the MCCA is a public body, we must proceed to the second part of our analysis; namely a reconsideration of "whether MCL 500.134(4) violates art 4, § 25" of the Michigan Constitution. *Coalition Protecting Auto No-Fault*, 498 Mich at 896.

## II. STANDARD OF REVIEW

Resolution of the issues on remand requires that we interpret and apply the relevant statutory provisions, which involves a question of law that we review de novo. *Klooster v City of Charlevoix*, 488 Mich 289, 295; 795 NW2d 578 (2011). Similarly, whether a statutory provision violates the state constitution involves a question of law that we review de novo. *Mayor of Cadillac v Blackburn*, 306 Mich App 512, 516; 857 NW2d 529 (2014).

## III. ANALYSIS

### A. IS THE MCCA A "PUBLIC BODY" FOR PURPOSES OF FOIA?

---

[3] *Coalition Protecting Auto No-Fault v Mich Catastrophic Claims Assoc*, unpublished order of the Court of Appeals, entered July 22, 2014 (Docket No. 314310).

In accordance with our Supreme Court's directive on remand, we must first evaluate and determine whether the MCCA is a "public body" for purposes of FOIA by examining: MCL 15.232(d)(iv), our Supreme Court's decision in *League Gen Ins Co*, 435 Mich at 351, and 1988 PA 349, § 2.

### *i. FOIA*

"Under FOIA, a public body must disclose all public records that are not specifically exempt under the act." *Hopkins v Duncan Twp.,* 294 Mich App 401, 409; 812 NW2d 27 (2011), citing MCL 15.233(1). The issue in this case is whether the MCCA is a "public body" for purposes of FOIA. To resolve this issue we must interpret and apply the relevant portions of FOIA. "[T]o construe a statute we must first examine its language, according every word and phrase its plain and ordinary meaning and considering the grammatical context." *Lafarge Midwest, Inc v Detroit*, 290 Mich App 240, 249; 801 NW2d 629 (2010), citing MCL 8.3a. Furthermore,

> [i]t is axiomatic that statutory language expresses legislative intent. A fundamental principle of statutory construction is that a clear and unambiguous statute leaves no room for judicial construction or interpretation. Where the statute unambiguously conveys the Legislature's intent, the proper role of a court is simply to apply the terms of the statute to the circumstances in a particular case. [*Mich Dep't of Transp v Tomkins*, 481 Mich 184, 191; 749 NW2d 716 (2008) (quotation marks omitted).]

FOIA defines "public body" as follows:

> (d) "*Public body*" means any of the following:
>
> (*i*) A state officer, employee, agency, department, division, bureau, board, commission, council, authority, or other body in the executive branch of the state government, but does not include the governor or lieutenant governor, the executive office of the governor or lieutenant governor, or employees thereof.
>
> (*ii*) An agency, board, commission, or council in the legislative branch of the state government.
>
> (*iii*) A county, city, township, village, intercounty, intercity, or regional governing body, council, school district, special district, or municipal corporation, or a board, department, commission, council, or agency thereof.
>
> (*iv*) *Any other body which is created by state or local authority or which is primarily funded by or through state or local authority.* [MCL 15.232 (emphasis added).]

While subparagraphs (i)-(iii) are inapplicable in this case, MCL 15.232(d)(iv) has been characterized as a "catchall provision." *Jackson v Eastern Mich Univ Foundation*, 215 Mich App 240, 244; 544 NW2d 737 (1996). "Set in the disjunctive," subparagraph (d)(iv) "indicates that 'any other body' is a public body, and thus subject to the FOIA, *if it is either (1) created by*

*state or local authority*, *or* (2) primarily funded by or through state or local authority." *Id.* at 244-245 (emphasis added).

While the MCCA may not be funded through state authority, the MCCA is a body that was created by statute and therefore is the product of "state authority." A "body" is defined in relevant part as "[a]n artificial person created by a legal authority. See [corporation]," and "[a]n aggregate of individuals or groups. . ." *Black's Law Dictionary* (10th ed), p. 209. The MCCA is an aggregate group of insurers or a group of "artificial persons"—i.e. insurance corporations. Thus, it is a "body" as that term is generally understood. See *Brackett v Focus Hope, Inc*, 482 Mich 269, 276; 753 NW2d 207 (2008) (noting that unless otherwise defined by statute, words should be afforded their plain and ordinary meaning.).

Furthermore, the MCCA was created by state authority. Specifically, the Legislature, an apparatus of the state, exercised its constitutional authority when it created the MCCA in 1978[4] following the enactment of the no-fault act, "to serve as the means for reimbursing each member insurer for all 'ultimate loss sustained under personal protection insurance coverages in excess of [a specified amount for identified years of policy coverage] in each loss occurrence.'" *League Gen Ins*, 435 Mich at 340-341, quoting MCL 500.3104(2). Thus, the MCCA, is a body that was created by state authority; therefore, for purposes of FOIA the MCCA is a "public body." MCL 15.232(d)(iv).

The MCCA conflates the disjunctive wording of MCL 15.232(d)(iv) to suggest that a "public body" requires both creation "by state or local authority" *and* a primary receipt of funding "by or through state or local authority" rather than as alternative methods of creation as indicated by the statutory inclusion of the word "or" within the subsection. Based on the principles regarding plain and unambiguous statutory language, the Legislature's use of the term "or" within MCL 15.232(d)(iv) "refers to a choice or alternative between two or more things," *Auto-Owners Ins Co v Stenberg Bros, Inc*, 227 Mich App 45, 50; 575 NW2d 79 (1997), and not a confluence of two distinct requirements. As this Court has previously recognized, the words "and" and "or" "are not interchangeable and their strict meaning should be followed when their accurate reading does not render the sense dubious and there is no clear legislative intent to have the words or clauses read in the conjunctive." *Id.* at 50-51 (quotation marks omitted).

The MCCA also argues that it cannot be a "public body" under MCL 15.232(d)(iv) because it also falls within FOIA's definition of "person" set forth in MCL 15.232(c) as follows:

> "Person" means an individual, corporation, limited liability company, partnership, firm, organization, *association*, governmental entity, or other legal entity. Person does not include an individual serving a sentence of imprisonment in a state or county correctional facility in this state or any other state, or in a federal correctional facility. [MCL 15.232(c) (emphasis added).]

---

[4] See 1978 PA 136; MCL 500.3104(1).

The MCCA is correct that, as an association, it falls within FOIA's definition of "person" under MCL 15.232(c). However, contrary to MCCA's argument, its status as a "person" does not preclude its simultaneous characterization as a "public body." A "person" in accordance with MCL 15.232(c) includes a "governmental entity." Yet various governmental entities, such as state agencies, departments, boards, or employees within the executive and legislative branches, with specific exceptions, are also identified as a "public body" within MCL 15.232(d)(i), (ii), (iii) and (v). Hence, the MCCA's reliance on the principle of *expressio unius est exclusion alterious*[5] is misplaced. Merely because the term "person" is not included within the statutory provision defining a "public body," it cannot be assumed that the overlap or concurrence in the identification of entities within the respective definitions of those terms necessitate mutual exclusion. Rather, "when a statute specifically defines a given term, that definition alone controls." *Vargo v Sauer*, 457 Mich 49, 58; 576 NW2d 656 (1998).

The MCCA cites an opinion by the Attorney General, 1980 OAG 5750, dated July 29, 1980, in support of its contention that a private entity or association cannot simultaneously be a public body. The MCCA cites a portion of the opinion, which states:

> Nonprofit corporations are private legal entities which operate in the nongovernmental, private sector. While nonprofit corporations often provide a variety of services to government and the public, the rendering of such services does not convert a nonprofit corporation into a public entity. [OAG, 1980, No. 5,750, p 897, 899 ( July 29, 1980).]

Initially, we note that Attorney General opinions are not binding on this Court. *Cheboygan Sportsman Club v Cheboygan Co Prosecuting Attorney*, 307 Mich App 71, 83 n 6; 858 NW2d 751 (2014). Moreover, the MCCA omitted the recognition within the same opinion that "'[t]he character of a corporation as public or private is determined by the terms of its charter and the general law under which it was organized and not upon the character of its stockholders. . . .'" *Id*., quoting 18 Am Jr 2d, Corporations, § 8, p 554. Hence, the Attorney General recognized, "[t]he legislature has authorized the formation of certain public legal entities . . . to facilitate joint governmental efforts for the furnishing of various services. . . ." *Id*. Here, as discussed above, the Legislature formed the MCCA, thus it is a product of state authority and a "public body" for purposes of FOIA.

In sum, because the MCCA was created by statute it is a product of state authority and qualifies as a "public body" for purposes of FOIA. MCL 15.232(d)(iv).

### ii. League General Insurance

---

[5] "[T]he doctrine of *expressio unius est exclusio alterius* . . . means the express mention of one thing implies the exclusion of another." *MidAmerican Energy Co v Dep't of Treasury*, 308 Mich App 362, 370; 863 NW2d 387 (2014).

Our Supreme Court's holding in *League Gen Ins*, 435 Mich at 338 does not alter our conclusion that the MCCA is a public body for purposes of FOIA.

In *League Gen Ins*, the plaintiffs were no-fault insurance providers and mandatory members of the MCCA. *Id*. at 340-341. The insurers brought suit challenging the MCCA's calculation and collection of premium assessments, asserting that the MCCA was a state agency and therefore subject to the provisions of the APA. *Id*. at 341-342. The insurers argued that the MCCA failed to comply with the APA's rule-making requirements rendering the assessments invalid. *Id*. This Court affirmed the trial court's ruling that the MCCA was a state agency subject to the APA because

> (1) the MCCA was created by statute, (2) the Commissioner of Insurance appoints the directors and serves as ex officio member of the board of directors, (3) the MCCA levies mandatory assessments against its members, and (4) it has the power to adopt rules and hear complaints. [*League Gen Ins*, 435 Mich at 345.]

Thereafter, before our Supreme Court granted leave to appeal, the Legislature amended the APA to specifically exclude the MCCA from the definition of "state agency." *Id*. at 342, citing 1988 PA 277. Our Supreme Court then granted leave to appeal to determine whether the MCCA was a state agency for purposes of the APA prior to the amendment. *Id*. at 343.

Our Supreme Court explained that in MCL 24.203(2) the APA defined a "state agency," as "a state department, bureau, division, section, board, commission, trustee, authority or officer, created by the constitution, statute, or agency action." *Id*. The Court held that this statutory language required the presence of two characteristics to constitute a state agency, stating:

> the proper interpretation of this statute requires the presence of two characteristics for an "agency." The entity at issue must be a "state" unit or position and must be created by the constitution, by statute, or by agency action. If these two requirements are met, and it is not specifically exempted, an "agency" is subject to the provisions of the APA. [*Id*. (citations and footnote omitted).]

Whether the MCCA was a state agency for purposes of the APA turned on the first-prong of this analysis—i.e. whether the MCCA was a "state" unit or position. In resolving this question, the *League Gen Ins Court* reviewed *In re Advisory Opinion re Constitutionality of 1966 PA 346*, 380 Mich 554; 158 NW2d 416 (1968), wherein the Court "had to ascertain whether the 'state' housing development authority was an instrumentality of state government." *League Gen Ins*, 435 Mich at 344. In doing so, the *Advisory Opn Court* "'look[ed] behind the name to the thing named'" to "'examine its character, its relations, and its functions to determine, indeed, whether it is an agency or instrumentality of State government.'" *League Gen Ins*, 435 Mich at 344-345, quoting *Advisory Opinion*, 380 Mich at 571.

The *League Gen Ins Court* concluded that "[t]aken as a whole, the characteristics of the MCCA lead us to recognize it as a private association." *Id*. at 350. The Court explained,

As noted previously, the commissioner has no voting power on the board and is not statutorily empowered to remove board members. Furthermore, although the MCCA's plan of operation is subject to the commissioner's approval . . . this action is no different from the commissioner's review of the rates and plans of private insurers. [*Id*.]

As part of its analysis, the Court examined the "function of the entity" and rejected the notion that the MCCA served a public function, explaining:

As we have already recognized, the association's formation may have bestowed an incidental benefit upon the public by facilitating availability of automobile insurance. Nonetheless, its primary purpose was to protect smaller insurers from the potentially severe financial repercussions of the no-fault act. The MCCA was enacted to create an association of insurance companies that could more evenly bear the expense of a catastrophic claim, as opposed to an individual company. We believe that this attempt to attain a less burdensome structure for handling catastrophic no-fault claims was intended primarily for private, not public, benefit. [*Id*. at 350-351.]

*League Gen Ins* is not dispositive of the status of the MCCA for purposes of FOIA. Importantly, the criteria that must be met for an entity to be a "state agency" under the APA, MCL 24.203(2), is narrower than that required to attain the status of a "public body" under FOIA, MCL 15.232(d)(iv). As noted above, the APA requires "the presence of two characteristics" to qualify as a state agency—i.e. the entity must be "a 'state' unit or position and must be created by the constitution, by statute, or by agency action." *League Gen Ins*, 435 Mich at 343.

In contrast, FOIA defines "public body" more broadly. Under FOIA, a body qualifies as a "public body" merely if it is created by state authority, MCL 15.232(d)(iv). Thus, unlike *League Gen Ins*, under a FOIA analysis, there is no need to engage in a searching inquiry into the characteristics and function of the MCCA. In short, the APA's definition of a "state agency" is not concomitant or interchangeable with the term "public body" as used in FOIA. As recognized in *Grimes v Mich Dep't of Transp*, 475 Mich 72, 85; 715 NW2d 275 (2006), "reliance on an unrelated statute to construe another is a perilous endeavor to be avoided by our courts." FOIA and APA are self-contained in that they do not reference one another and both statutes contain their own definition of terms. Because the issue now before this Court pertains to the status of the MCCA under FOIA, it would be improper to extrapolate and expand the definition of a public body to coincide with the APA's definition of a state agency, as there is nothing in the statutory language to suggest that they are or were intended to be construed in the same manner given the divergent and specific definitions and purposes.

In sum, *League Gen Ins* does not govern the outcome of this case and it does not alter our conclusion that the MCCA is a public body for purposes of FOIA pursuant to the plain language of MCL 15.232(d)(iv).

*iii. 1988 PA 349, § 2*

Our Supreme Court also instructed this Court on remand to evaluate the MCCA's status as a public body in conjunction with 1988 PA 349, § 2, which amended MCL 500.134. MCL 500.134 is part of chapter 1 of the Insurance Code; chapter 31 of the Insurance Code, MCL 500.3101 *et seq.*, is the no-fault act. Prior to the 1988 amendment, MCL 500.134 provided as follows:

> Every certificate of authority or license in force immediately prior to the effective date of this act and existing under any act herein repealed is valid until its original expiration date, unless earlier terminated in accordance with this act. [1956 PA 218.]

In 1987, this Court issued *League Gen Ins Co v Catastrophic Claims Association*, 165 Mich App 278; 418 NW2d 708 (1987), reversed 435 Mich 338 (1990), wherein this Court held that the MCCA was a "state agency" for purposes of the APA. Before our Supreme Court reversed that decision in *League Gen Ins*, 435 Mich at 338, the Legislature enacted 1988 PA 349 and amended MCL 500.134 to read in relevant part as follows:

> (1) Every certificate of authority or license in force immediately prior to January 1, 1957 and existing under any act repealed by this act is valid until its original expiration date, unless earlier terminated in accordance with this act.

> (2) Any plan of operation adopted by an association or facility, and any premium or assessment levied against an insurer member of that association or facility, is hereby validated retroactively to the date of its original adoption or levy and shall continue in force and effect according to the terms of the plan of operation, premium, or assessment until otherwise changed by the commissioner or the board of directors of the association or facility pursuant to this act.

> (3) *An association or facility or the board of directors of the association or facility is not a state agency and the money of an association or facility is not state money.*

> (4) A record of an association or facility shall be exempted from disclosure pursuant to section 13 of the freedom of information act, Act No. 442 of the Public Acts of 1976, being section 15.243 of the Michigan Compiled Laws.

> (5) Any premium or assessment levied by an association or facility, or any premium or assessment of a similar association or facility formed under a law in force outside this state, is not a burden or special burden for purposes of a calculation under section 476a and any premium or assessment paid to an association or facility shall not be included in determining the aggregate amount a foreign insurer pays to the commissioner under section 476a.

> (6) As used in this section, *"association or facility" means* an association of insurers created under this act and any other association or facility formed under this act as a nonprofit organization of insurer members, including, but not limited to, the following:

* * *

    (c) *The catastrophic claims association* created under chapter [31.4] [Emphasis added.]

On remand, our Supreme Court directed this Court to consider 1988 PA 349 § 2 (Section 2), which provides:

    The amendment to section 134 of Act No. 218 of the Public Acts of 1956, being section 500.134 of the Michigan Compiled Laws, pursuant to this amendatory act is *intended to codify, approve, and validate the actions and long-standing practices taken by the associations and facilities mentioned in this amendatory act retroactively to the time of their original creation. It is the intent of this amendatory act to rectify the misconstruction of the applicability of the administrative procedures act of 1969 by the court of appeals in [League General Inse Co v Catastrophic Claims Assoc*, 165 Mich App at 278] *with respect to the imposition of rule promulgation requirements on the catastrophic claims association as a state agency, and to further assure that the associations and facilities mentioned in this amendatory act, and their respective boards of directors, shall not hereafter be treated as a state agency or public body.* [Emphasis added.]

The MCCA argues that Section 2 indicates that it is not a public body for purposes of FOIA. However, Section 2 does not control over the plain statutory language set forth in MCL 15.232(d)(iv) that defines a public body for purposes of FOIA. Indeed, our Supreme Court has repeatedly held that courts are not to look to legislative history to contradict plain statutory language. For example, in *People v Gardner*, 482 Mich 41, 55; 753 NW2d 78 (2008), the Court held that it was error to construe "the *unambiguous* terms of [a] statute by reference to legislative history." Similarly, in *American Axle & Mfg, Inc v City of Hamtramck*, 461 Mich 352, 362; 604 NW2d 330 (2000), the Court explained that this Court erred when it looked to drafters' notes to interpret an unambiguous clause in the state constitution, explaining, "[t]he Court of Appeals, however, did not analyze the language of art 9, § 31, but rather primarily examined drafters' notes relating to the amendment. This reliance on extrinsic evidence was inappropriate because the constitutional language is clear."

In this case, as discussed in more detail above, the term "public body" is clearly defined by the unambiguous language in MCL 15.232(d)(iv). Therefore, judicial construction is not permitted and to the extent that Section 2 conflicts with the plain language of that statute, it is not controlling. *Gardner*, 482 Mich at 55; *American Axle & Mfg*, 461 Mich at 362; see also *McCormick v Carrier*, 487 Mich 180, 191; 795 NW2d 517 (2010) ("Judicial construction of an unambiguous statute is neither required nor permitted."); *Valez v Tuma*, 492 Mich 1, 16-17; 821 NW2d 432 (2012) (clear statutory language must be enforced as written); *Miller v Allstate Ins. Co.*, 481 Mich 601, 613; 751 NW2d 463 (2008) ("[S]pecific provisions ... prevail over any arguable inconsistency with the more general rule....").

Moreover, nothing in MCL 500.134 states that the MCCA is not a "public body" for purposes of FOIA. While the Legislature included specific language in MCL 500.134(3)

indicating that the MCCA is not a "state agency," the Legislature did not include a similar provision indicating that the MCCA is not a "public body." Had the Legislature intended to exclude the MCCA from the definition of a public body for purposes of FOIA, it could have included a statutory provision in MCL 500.134 indicating as much. Instead, the Legislature enacted MCL 500.134(4), and excluded the MCCA's records from FOIA, which tends to support that, at the time of the amendment, the Legislature was aware that the MCCA was a public body subject to FOIA. See *Robinson v City of Detroit*, 462 Mich 439, 459-460; 613 NW2d 307 (2000) (noting that "the judiciary has always adhered to the principle that the Legislature, having acted, is held to know what it has done."). Indeed by exempting the MCCA's records from FOIA, the Legislature effectuated its intent set forth in 1988 PA 349 § 2 by ensuring that the MCCA would not be "treated" as a public body.

### iv. Summary

FOIA broadly defines a public body to include "[a]ny other body which is created by state or local authority or which is primarily funded by or through state or local authority." MCL 15.232(d)(iv). The MCCA is a public body for purposes of FOIA because it is a body that was created by state authority when the Legislature amended the no-fault act and created the MCCA. Our Supreme Court's holding in *League Gen Ins*, 435 Mich at 338, does not impact our conclusion that the MCCA is a public body for purposes of FOIA because that case involved a different statutory scheme that has no bearing on FOIA's definition of a public body. Finally, nothing in 1988 PA 349, § 2 alters our conclusion that the MCCA falls within the plain language of MCL 15.232(d)(iv).

### B. CONST 1963, ART 4, § 25

Having concluded that the MCCA is a public body for purposes of FOIA, we proceed to determine whether MCL 500.134(4) violates Const 1963 art 4, § 25. *Coalition Protecting Auto No-Fault*, 498 Mich at 896.

At the outset, we note that in reviewing the constitutionality of a statute,

> Statutes are presumed to be constitutional, and courts have a duty to construe a statute as constitutional unless its unconstitutionality is clearly apparent. Further, when considering a claim that a statute is unconstitutional, the Court does not inquire into the wisdom of the legislation. [*Taylor v Smithkline Beecham Corp*, 468 Mich 1, 6; 658 NW2d 127 (2003).]

"Every reasonable presumption or intendment must be indulged in favor of the validity of an act, and it is only when invalidity appears so clearly as to leave no room for reasonable doubt that it violates some provision of the Constitution that a court will refuse to sustain its validity." *Phillips v Mirac, Inc*, 470 Mich 415, 423; 685 NW2d 174 (2004) (quotation marks and citations omitted). The party initiating the challenge assumes the burden of proving that a statue is unconstitutional. *DeRose v DeRose*, 469 Mich 320, 349; 666 NW2d 636 (2003).

Const 1963, art 4, § 25 provides:

No law shall be revised, altered or amended by reference to its title only. The section or sections of the act altered or amended shall be re-enacted and published at length.

This constitutional provision has a longstanding history having appeared in the state's constitution of 1850. *Advisory Opinion re Constitutionality of 1972 PA 294*, 389 Mich 441, 469; 208 NW2d 469 (1973).[6] Justice COOLEY, writing for our Supreme Court, articulated the purpose of the clause as follows:

> The mischief designed to be remedied was the enactment of amendatory statutes in terms so blind that the legislators themselves were sometimes deceived in regard to their effect, and the public, from the difficulty in making the necessary examination and comparison, failed to become apprised of the changes made in the laws. [*People ex rel Drake v Mahaney*, 13 Mich 481, 497 (1865).]

To that end, the language in § 25 is clear: "[i]t says succinctly and straightforwardly that no law . . . shall be revised, altered or amended by reference to its title only. The constitutional language then proceeds to state how [the revision] shall be done (*i.e.*, the section[s]) of the act in question shall be amended by re-enacting and republishing at length)." *Advisory Opinion re Constitutionality of 1972 PA 294*, 389 Mich at 470. A review of relevant case law illustrates how courts have applied art 4, § 25 over the years.

In one of the first cases to address the clause, in *Mahaney*, 13 Mich at 490, our Supreme Court articulated that "amendment by implication" and amendments to an "act complete in itself" do not violate art 4 § 25. In *Mahaney*, the Court reviewed an act that established "a police government for the city of Detroit." *Id*. The act abolished the offices of "city marshal and assistant marshal of the city of Detroit" and transferred the duties of those offices to "the superintendent of police . . . in accordance with the provisions of this act." *Id*. Writing for the Court, Justice COOLEY explained that the new law did not violate art 4, § 25, stating:

> The act before us does not assume in terms, to revise, alter or amend any prior act, or section of an act, but by various transfers of duties it has an amendatory effect by implication, and by its last section it repeals all inconsistent acts. We are unable to see how this conflicts with the provision referred to. If, whenever a new statute is passed, it is necessary that all prior statutes, modified by it by implication should be re-enacted and published at length as modified, then a large portion of the whole code of laws of the state would require to be republished at every session, and parts of it several times over, until, from mere immensity of

---

[6] An advisory opinion "is not precedentially binding in the same sense as a decision of the Court after a hearing on the merits"; however, an advisory opinion can be persuasive. *AFT Mich v Mich*, 303 Mich App 651, 657, 657 n 4; 846 NW2d 583 (2014) (quotation marks and citations omitted).

material, it would be impossible to tell what the law was. [*Mahaney*, 13 Mich at 496.]

In *Mahaney*, Justice COOLEY also explained that an "act complete in itself" was not anathema to art 4, § 25, stating:

> An amendatory act which purported only to insert certain words, or to substitute one phrase for another in an act or section which was only referred to but not republished, was well calculated to mislead the careless as to its effect, and was, perhaps, sometimes drawn in that form for that express purpose. Endless confusion was thus introduced into the law, and the constitution wisely prohibited such legislation. *But an act complete in itself is not within the mischief designed to be remedied by this provision, and cannot be held to be prohibited by it without violating its plain intent.* [*Mahaney*, 13 Mich at 497 (emphasis added).]

In contrast, in *Mok v Detroit Bldg and Savings Assoc*, 30 Mich 511 (1875), the Court held that a building and savings association act of 1869 improperly amended a similar act of 1853. Justice COOLEY, again writing for the Court, explained that the act of 1869 purported to amend the act of 1853 without reenactment and republication of the latter, explaining:

> But while the act of 1869 referred parties in this circuitous manner to that of 1853 for the requirements in organization, *it undertook at the same time to dispense with some things required by that act, and to make some changes.* [*Id*. at 521-522 (emphasis added).]

> \* \* \*

> The act of 1853 has been . . . incorporated in and made a part of the act of 1869, but with several changes and modifications, and these not made by the re-enactment of the sections changed or modified, but only by indicating the extent of the changes, leaving the parties concerned to fit the new act to the old as best they may. [*Id*. at 523.]

Following *Mok*, cases similar to *Burton v Koch*, 184 Mich 250; 151 NW 148 (1915), overruled in part by *Alan*, 388 Mich at 210, "created an aberration of the doctrine of amendment by implication by the practice of hair splitting the meaning of the constitution so that only the specific act *directly* amended need be published while others that were affected need not be published." *Alan*, 388 Mich at 279. However, in the seminal case of *Alan*, 388 Mich at 210, our Supreme Court overruled *Burton* and reaffirmed *Mok*. *Alan*, 388 Mich at 281.

In *Alan*, the Revenue Bond Act, 1933 PA 94 (hereinafter Act 94), authorized a locality to issue a limited type of bond for public improvements that would be repaid through revenue generated solely from the public improvement financed by the bond. *Alan*, 388 Mich at 246. In *Alan*, the Court addressed whether § 11 of the Building Authority Act, 1948 PA 31 § 11, (hereinafter Act 31), could create a tax bond exception to Act 94. *Id*. at 268. The Court held that Act 31 could not create such an exception without reenactment and republication explaining,

If an act is to be referred to or incorporated by reference then it will be treated as incorporated without any changes unless the sections intended to be altered or amended are reenacted and published at length as required by Const 1963, art 4, § 25. [*Id*. at 277.]

The *Alan* Court explained that the case was dissimilar to *Mahaney*, 13 Mich at 481, in that Act 31 did not present a "so-called 'amendment by implication.'" *Alan*, 388 Mich at 270, citing *Mahaney*, 13 Mich at 496. The *Alan* Court held that the "amendment by implication" exception should be limited to:

those limited kinds of cases where because of a special fact situation a court is faced with two accidentally absolutely conflicting statutes requiring a determination that one or the other applies (and thus an amendment or repeal of the other by implication follows in the fact circumstances). These kinds of cases do not result from any deliberate misleading by the Legislature or failure to make all reasonable efforts to make clear in the statutes what is intended, but rather, as we said in *Mok* . . . "[i]t is probable that if the requirement has at any time been disregarded by the legislature, the default has proceeded from inadvertence merely." [*Alan*, 388 Mich at 285-286, quoting *Mok*, 30 Mich at 517.]

However, "[i]f a bill under consideration is intended whether directly or indirectly to *revise, alter, or amend* the operation of previous statutes, then the constitution, unless and until appropriately amended, requires that the Legislature do in fact what it intends to do by operation." *Id*. at 285.

Two cases are illustrative of the application of art 4, § 25 post-*Alan*. In *Midland Twp v Boundary Comm*, 401 Mich 641, 650; 259 NW2d 326 (1977), the Home Rule Cities Act (HRCA), MCL 117.1 *et seq*., established "the procedures for the incorporation, consolidation or alteration of [city] boundaries." Thereafter, in separate legislation in 1968, the Legislature passed the Boundary Commission Act (BCA), creating the State Boundary Commission (the Commission) and provided it with certain authorities. *Id*. at 650, citing 1968 PA 191; MCL 123.1001 *et. seq*. Subsequently, in 1970, the Legislature amended the HRCA to extend the Commission's powers to include annexations. *Id*. at 650, citing 1970 PA 219; MCL 117.9. Certain plaintiffs challenged the legislation, arguing *inter alia*, that the 1970 HRCA annexation amendment violated art 4, § 25, because the Legislature did not reenact and republish certain portions of the BCA act of 1968. *Id*. at 656-657.

On appeal, this Court held that the 1970 annexation amendment did not run afoul of the art 4, § 25, explaining:

the 1970 amendment . . . while incorporating by reference provisions of the 1968 act, does not "dispense with" or "change" any provision of the 1968 act . . . By its terms, the 1970 amendment makes no change or dispensation of any requirement of the 1968 act.

[] [I]n contrast with *Mok*, there is no express amendment of the 1968 act. [*Midland Twp*, 401 Mich at 659-661.]

In contrast, in *Nalbandian v Progressive Michigan Ins Co*, 267 Mich App 7; 703 NW2d 474 (2005), this Court held that an amendment to the Vehicle Code improperly altered a provision of the Insurance Code without reenactment and republication of the Insurance Code. In *Nalbandian*, the Insurance Code allowed insurance companies to "consider speed limit violations in assessing 'insurance eligibility points' for the purpose of determining whether and at what premium rates to provide insurance to drivers." *Id*. at 9. In 1987, the Legislature amended the Vehicle Code, enacting MCL 257.628(11), wherein the Legislature created a "55 mph speed zone exception." *Id*., citing 1987 PA 154. The amendment disallowed "the imposition of any insurance eligibility points for ten mile per hour (or less) speed limit violations" in circumstances where a driver was ticketed for speeding ten miles-per-hour or less in a 55-mph zone. *Id*. On appeal, this Court was tasked with determining whether the 55-mph speed zone exception revised or altered the Insurance Code without reenactment and republication. *Id*. at 9-10.

Relying on *Alan*, 388 Mich at 210, this Court held that the Vehicle Code was not an amendment by implication, explaining:

> [The Vehicle Code amendment], was not a general act that, as a result of some special fact situation, presents an accidental conflict with the . . . Insurance Code. The conflict between the two is not one resulting from mere inadvertence. To the contrary, [the amendment] quite clearly resulted from a legislative knowledge of the Insurance Code's 2-point rule and an intent to abrogate that rule with respect to 55 mile per hour speed zone violations. [*Nalbandian*, 267 Mich App at 14, (quotation marks and citations omitted).]

The *Nalbandian* Court also concluded that the amendment was not "an act complete in itself," such that reenactment and republication of the Insurance Code was not required. *Id*. at 14-15. Instead,

> [The amendment] is a piecemeal amendment to an existing comprehensive statutory scheme . . . [The amendment] attempt[ed] to amend the old law by intermingling new and different provisions with the old ones found in the Insurance Code. Thus, 1987 PA 154 was not an act complete in itself, and Const. 1963, art. 4, § 25 applied to its enactment. [*Nalbandian*, 267 Mich App at 15-16, (quotation marks and citations omitted).]

Turning to the present case, in 1988 the Legislature amended MCL 500.134, a subsection of the Insurance Code. 1988 PA 349. As noted above, the amendment added subparagraphs (2) through (6); relevant to this case is subparagraph (4), which provides as follows:

> A record of an association or facility shall be exempted from disclosure pursuant to section 13 of the freedom of information act, Act No. 442 of the Public Acts of 1976, being section 15.243 of the Michigan Compiled Laws. [MCL 500.134(4).]

At the same time, the Legislature defined the term "association" to include the MCCA. MCL 500.134(6). Thus, stated simply, the 1988 amendment exempted the MCCA's records from FOIA disclosure.

At the time of the amendment, FOIA provided in relevant part as follows:

(1) A public body may exempt from disclosure as a public record under this act any of the following:

* * *

(d) Records or information specifically described and exempted from disclosure by statute. [MCL 15.243(1); see also 1976 PA 442.]

This case does not involve an "amendment by implication" as discussed in *Mahaney* and later in *Alan*. The legislative amendment adding MCL 500.134(4) did not create a "special fact situation" resulting in "two accidentally absolutely conflicting statutes." *Alan*, 388 Mich at 285-285. Indeed, there is no conflict between MCL 500.134(4) and FOIA. The 1988 amendment adding MCL 500.134(4) is dissimilar to the amendments in *Mok* and *Nalbandian*. The 1988 amendment did not undertake to "dispense with some things required" by FOIA, it did not "make some changes" to FOIA, nor did it incorporate FOIA and "accommodate it by indirect amendments." *Mok*, 30 Mich at 521-522. Similarly, the MCL 500.134(4) is not a "piecemeal amendment to an existing comprehensive statutory scheme," and the statutory provision did not "attempt to amend [an] old law by intermingling new and different provisions with the old ones found" in FOIA. *Nalbandian*, 267 Mich App at 15-16.

Instead, MCL 500.134(4) is akin to the amendment in *Midland Twp*, 401 Mich at 660-661. Similar to the amendment in *Midland Twp*, in this case, the Legislature did not "dispense with" or "change" any provision of FOIA when it revised the Insurance Code and enacted MCL 500.134(4). Rather, MCL 500.134(4) works in concert with FOIA because, "§ 13(1)(d) [of FOIA] provides in pertinent part that '[a] public body may exempt from disclosure as a public record under this act ... [r]ecords or information specifically described and exempted from disclosure by statute.'" *Coalition Protecting Auto No-Fault*, 305 Mich App at 313-134, quoting MCL 15.243(1)(d). Thus, the legislative amendment "does not, expressly or otherwise, dispense with or change the provisions of [FOIA]" because FOIA was drafted in a manner that permits other statutes to exempt public bodies from FOIA's disclosure requirements. *Midland Twp*, 401 Mich at 661.

In sum, because MCL 500.134(4) did not alter, amend, change or dispense with any provisions of FOIA, at the time of that statute's enactment, the Legislature was not required to reenact and republish FOIA under Const 1963, art 4 § 25.

IV. CONCLUSION

The MCCA was created by state authority and it is therefore a "public body" for purposes of FOIA. The Legislature did not violate 1963 Const, art 4, § 25 when it enacted MCL 500.134(4). Accordingly, although the MCCA is a public body, as we concluded in our prior opinion, its records are exempt from disclosure under MCL 500.134(4) and (6)(c) and the trial court erred in granting summary disposition in favor of plaintiffs and in denying MCCA's motion for summary disposition. See *Coalition Protecting Auto No-Fault*, 305 Mich App at 326-327.

Reversed and remanded for entry of an order awarding summary disposition in favor of MCCA. A public question being involved, no costs awarded. MCR 7.219(A). We do not retain jurisdiction.


/s/ Stephen L. Borrello
/s/ Donald S. Owens